## THOMAS D. DALY vs. EDWIN O. DIMOCK.

Hartford Dist., Oct. T., 1887. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

55 579
65 362
55 579
74 197
55 579
76 178

The statute (Revision of 1888; sec. 2011) provides that every coroner shall reduce to writing and return to the clerk of the Superior Court in the county, the testimony of all witnesses examined in any inquest, with the finding, and all certificates sent him by the medical examiner in the case. Held that these documents in the hands of the clerk are open to the inspection of all persons interested.

And that the inspection of them could not be refused to a person indicted for a homicide, as to which an inquest had been held.

Under the statute there is no discretion in the matter on the part of the coroner, the clerk or the court.

While a court will in many cases exercise its discretion as to granting the writ of mandamus, yet it will not refuse it where the applicant has a clear legal right, a substantial matter is involved, and there is no other adequate legal remedy.

[Argued October 5th—decided December 5th, 1887.]

APPLICATION for a writ of mandamus; brought to the Superior Court in Tolland County.

The application stated that the plaintiff had been indicted in that court for murder in the second degree in killing one Thomas Murphy, and that the indictment was now pending in the court; that an inquest had been held upon the body of Murphy by the coroner of the county, who had caused an examination of the body to be made by the medical examiner of the county, assisted by sundry others; that the coroner had, under the provision of the statute prescribing his duties, within ten days after the inquest returned the testimony taken at the inquest, with his report as coroner,

to Edwin O. Dimock, Esq., the clerk of the Superior Court for the county, which documents were held by the clerk; that access to the testimony given at the inquest was essential to the preparation of the plaintiff's defense; that he was legally entitled to an inspection of the documents mentioned, and had made demand upon the clerk for permission to inspect them, and that the clerk had refused and still refused to allow him to inspect the same. The plaintiff therefore moved the court to issue a writ of mandamus requiring the said Dimock, as such clerk, to allow him and his attorneys to inspect and read the testimony in question, or show cause to the contrary.

The defendant filed the following demurrer to the application:—The defendant demurs—because the testimony of the several witnesses taken by the coroner upon the inquest is not a public record; because the public interests then required and still require that such testimony should not be inspected or read by said Daly or his attorneys; and because upon the facts averred the plaintiff is not entitled to the relief sought.

The case was reserved, upon the demurrer, for the advice of this court.

*B. H. Bill*, with whom was *C. Phelps*, in support of the demurrer.

1. The writ of mandamus is not demandable as a matter of right, but is awarded in the discretion of the court. *Rex* v. *Bristol Dock Co.*, 12 East, 429; *Am. Asylum* v. *Phœnix Bank*, 4 Conn., 172; *Ayres* v. *State Auditors*, 42 Mich., 422; *Page* v. *Clopton*, 30 Gratt., 415; *People* v. *Hatch*, 33 Ill., 9; *Woodman* v. *Com'rs of Somerset*, 24 Maine, 151; *State* v. *Graves*, 19 Md., 351. To entitle the party to this remedy there must be a clear legal right, not merely to the decision in respect to the thing, but to the thing itself. *People* v. *Booth*, 49 Barb., 31; *Peck* v. *Booth*, 42 Conn., 274; *State* v. *N. Haven & Northampton Co.*, 45 id., 332, 343. "And the court will not grant a mandamus where it appears that the object sought could have been secured with-

out serious difficulty without the aid of a court." *Harrison* v. *Simonds*, 44 Conn., 318.

2. The act concerning coroners provides that whenever any person shall come to a violent death or shall be found dead, the medical examiner shall make immediate inquiry, and if he shall be satisfied that the death was not caused by the criminal act of another, he shall so certify to the coroner, but if he shall see reason to suspect that it was so caused he shall so inform the coroner, and the coroner shall at once proceed to make all proper inquiry by himself or by a jury respecting the cause and manner of death. He may cause an examination of the body to be made, and take the testimony of such medical examiner or of any person or persons. He may order any inquest or any part thereof to be held in private. If the finding charges any person with having caused the death, the coroner is required without delay to communicate the import of the finding to a grand juror or a prosecuting attorney of the town or city. He is required to reduce to writing, and within ten days after any inquest to return the testimony of all witnesses examined to the clerk of the Superior Court of the county, with all certificates sent him by the medical examiner and all certificates by him made. He is required to keep a record book into which he shall copy all such certificates and in which he shall keep a record of all views, inquiries and inquests by him made or held, stating the time and place, the names and residences of the witnesses, the cause and manner of the death as found, the disposition and place of burial of the dead body, and a careful description of all dead bodies not identified before burial. He is required to take the dying declarations of persons dangerously wounded or injured by any criminal act of another. During an examination of witnesses he may cause them to be kept separate so that they cannot communicate with one another. And he is empowered to cause the immediate arrest and detention of any persons whom he has good reason to suspect guilty of causing the death of the one on whose body the inquest is held. From these provisions it is manifest that the purpose of

the statute is investigation, with a view to the discovery of crime and the apprehension of the criminal. It is a proceeding in the interest of the public against wrongdoers. It is an inquest, a mere investigation, and in no sense a tribunal. Its findings are not admissible in evidence, and have no force as judgments. The investigation need not be public. The coroner is required to return the testimony, the finding, and all certificates returned to or made by him, to the clerk of the Superior Court; but the clerk is not required to record them. They are only left in his custody for safe keeping. It does not follow that they are public records. To hold them to be such would oftentimes defeat the object of the statute, and make them serviceable to the criminal rather than helps to the prosecuting authorities. In the course of investigation facts might be developed very important to be withheld, beyond the limit of the ten days, from the public and especially from the suspected parties. The coroner is a public officer, and is required to keep a record book in which all certificates shall be copied, and in which all views, inquiries and inquests shall be recorded. It is a significant fact that the testimony of the witnesses is not included among the matters for record. All that is important for public knowledge is specially mentioned. This book is doubtless a public record, accessible to all parties who may be interested, and furnishes all the information intended for the public.

3. It is the indicted criminal who is asking for the testimony as a matter of right, claiming it to be essential for his defense. The according it is discretionary with the court. Would it be the exercise of a reasonable discretion to grant the request? The testimony is not even essential to a defense. It cannot be used as evidence. It can only be a benefit to the accused by informing him of what certain witnesses have testified on a former occasion. If the same witnesses should be offered in the trial, and they should testify differently, their former contradictory statements might be used against them. The application is virtually asking the court to com-

pel the state to disclose what evidence it may have against the accused.

4. The application should not. be granted, as the object sought could be secured without serious difficulty and without the aid of a court. *Harrison* v. *Simonds,* 44 Conn., 318. The accused has knowledge of the witnesses who have testified, and can get from them or from others the testimony which he is seeking by the aid of the court.

*W. C. Case,* with whom were *T. E. Steele* and *O. R. Wood,* contra.

1. As to the question whether or not this testimony is a public record. The proceedings of a coroner holding an inquest *super visum corporis* are judicial. *Regina* v. *White,* 3 El. & El., 137, 144; *People* v. *Willett,* 92 N. York, 29; *Giles* v. *Brown,* 1 So. Car. Const. R., 230; *Ferry* v. *Williams,* 41 N. Jer., 332; *Boistiniere* v. *County Com'rs.,* 32 Mo., 375; *State* v. *Hoblitzelle,* 85 id., 620; *People* v. *Devine,* 44 Cal., 452. In the last case the court says (p. 459): "Whether his proceedings be entered upon the coroner's roll at common law and the statute of Edward, or returned into court under our own statute, they amount to entries concerning matters of public interest." Why, if these proceedings are not "entries concerning matters of public interest" is the clerk of the court selected, of all the officers of the law, to be their custodian—the custodian of the product of a finished inquest —a judicial proceeding. And why, if they are "entries concerning matters of public interest," should they not be open to the public, in the hands of the servant of the public?" If the clerk may withhold the testimony from Daly because it is not a public record, the same reason would sustain his refusal to show it to any one.

2. But it is said that the public interests require that this testimony be withheld from Daly and his counsel. Time was, doubtless, when it was the policy of the law to keep a man accused in ignorance as much as possible, and as long as possible, of the case against him. It was thought that the due administration of criminal justice and the

" public interest " required that a man suspected of crime should be taken without warning, kept close prisoner from the time of his arrest, refused counsel and denied all opportunity to prepare his defense. But the times have changed. Step by step the English law has advanced to the idea that the due administration of justice is quite as much concerned about the protection of the innocent as the punishment of the guilty. The history of this advancement is contained in Stephen's " History of the Criminal Law of England," vol. 1, ch. 7. The coroner was the earliest officer of the English law, and the statute of Edward referred to in the California case (1276), is the earliest English law on the subject of coroners. By this statute it is no part of his duty to make any written transcript of the evidence upon which the verdict is founded. The statute of Philip and Mary (1554), required the coroner to " put in writing the effect of the evidence given before him, being material," and to bind over the witnesses to appear at the trial of the person accused. This act remained in force till 1826, when it was superseded by 7 Geo. IV. c. 64, § 4, which provides that every coroner, upon any inquisition before him taken whereby any one is indicted for manslaughter or murder or as an accessory to murder before the fact, shall put in writing the evidence given to the jury before him or as much thereof as shall be material, and shall have authority to bind over the witnesses to give evidence at the trial and certify and return the depositions and inquisitions to the court before which the person is to be tried. It will be observed that both these statutes devolved duties precisely similar upon coroners and justices in respect to reducing examinations to writing and returning them to court. We call attention to this fact because it is important to remember, in connection with the later English statutes, that the powers and duties of justices and coroners as to preliminary examinations were treated by the legislature as practically the same, and the same policy of the law obtained with regard to both. What that policy was is well shown in the charge of Mr. Justice PARKE to the grand jury

in *Thurtell's Case,* 1 Steph. Hist. Crim. Law, 227. "It was a constant and most natural and reasonable topic of complaint, by the prisoners who were tried for the Popish Plot, that they had been taken without warning, kept close prisoners from the time of their arrest, and kept in ignorance of the evidence against them till the very moment when they were brought into court to be tried." Id. 225. The first alteration in this state of things was effected in 1836, by the Prisoner's Counsel Act, 6 and 7 Wm. IV., c. 114, § 4, the third section of which provided " that all persons who shall be held to bail, or committed to prison for any offense against the law, shall be entitled to require and have on demand, from the person who shall have the lawful custody thereof, and who is hereby required to deliver the same, copies of the examination of witnesses respectively, upon whose depositions they have been so held to bail or committed to prison, upon payment of a reasonable sum therefor." In 1849 by 11 and 12 Vic., c. 42, s. 27, it was again provided that the accused should have a copy of the depositions taken against him. The next English statute on this subject was passed in 1859, and the following is the substantial part of it:—" At any time after all the depositions of witnesses shall have been taken, every person against whom any coroner's jury may have found a verdict of manslaughter, shall be entitled to have from the person having custody thereof, copies of the depositions on which such verdict shall have been found," etc. The next in order and the last (which applies only to Ireland) was passed in 1881 and is as follows:—" At any time after all the depositions of witnesses at any inquest shall have been taken, every person against whom any jury may have found a verdict of murder or manslaughter, shall be entitled to have from the coroner or from the person having custody thereof, copies of the depositions," etc. This abstract of English legislation on this subject cannot be better supplemented than by the following quotation from Stephen: " Speaking generally, the difference between the procedure established in the sixteenth century and the procedure of

the nineteenth is, that under the first the magistrate acts the part of a public prosecutor, whereas under the second he occupies the position of a preliminary judge. This appears in every detail. Under the acts of Philip and Mary the accused person is to be examined. This meant that he was to be fully questioned as to all the circumstances connected with his supposed offense. Under the act of Victoria he can be asked no questions at all, though he is invited to make any statement he pleases, being cautioned that it will be taken down and may be given in evidence against him. Under the statutes of Philip and Mary the examination of witnesses and the recording of their depositions was intended only for the information of the court. The prisoner had no right to be, and probably never was, present. Under the statute of Victoria the witnesses are to be examined in the prisoner's presence, and may be cross-examined by him, his counsel, or his attorney. Under the statute of Philip and Mary the depositions were to be returned to the court, but there is evidence that the prisoner was not allowed even to see them. Under the statute of Victoria he is entitled to a copy of them. In all these particulars the change is uniformly in the same direction. The object of the earlier statute is to expose and detect a man assumed to be guilty. In the later statute the object is a full inquiry into his guilt or innocence." 1 Steph. Hist. Crim. Law, 221. In 1883, when our legislature passed this act, the idea that the "public interests" would suffer from permitting an accused person access to the written testimony against him before his final trial, had been outgrown and discarded in England whence we take our law. Shall our statutes be construed in the light of the sixteenth century or in accordance with the policy of to-day? How will the "public interests" take detriment? It is not guilt which needs and seeks the right for which we contend. The criminal is armed in advance with far more knowledge than any coroner can give. Conscience informs him and memory is busy with every detail of his crime. But how shall the innocent escape if he be kept in the dark, shut out from the only sources of light

which exist, and suddenly confronted before the jurors upon his life with evidence which a reasonable opportunity would have enabled him to explain away and refute?

CARPENTER, J. This is an application for a writ of mandamus. The relator, Thomas D. Daly, alleges that he is indicted for murder in the second degree in causing the death of one Thomas Murphy; that the coroner held an inquest on the body of said Murphy; that the testimony of the witnesses was by the coroner reduced to writing and lodged with the clerk of the Superior Court; that access to said testimony is essential to his defense to the indictment; and that said clerk, the defendant, denies him the privilege of inspecting the testimony, etc. The defendant demurs on two grounds: 1st. That said testimony is not a public record; and 2d, that public interest requires that said testimony should not be read by said Daly or his attorney. The case is reserved for the advice of this court.

The decision depends upon the construction of the statute relating to coroners, passed in 1883. As that statute is not changed in the recent revision, we shall refer to that and not to the session laws of 1883.

Section 2011 of the revision is as follows: "The coroner shall reduce to writing, and shall, within ten days after any inquest has been held, return the testimony of all witnesses examined in the inquest to the clerk of the Superior Court in his county, together with his report of the inquest, which shall include his finding or the verdict of the jury; and he shall also return to said clerk all certificates sent him by the medical examiner in accordance with section 2006, and all similar certificates by him made."

The other sections of the act do not seem to have any special bearing upon the question before us. There are two clauses, however, that are relied on to some extent. In the 2009th section it is provided that the coroner "may order any inquest or any part thereof to be held in private." And in the 2016th section it is provided that "he may order and

cause witnesses to be kept separate, so that they cannot communicate with one another until they shall have testified."

We do not deem it important to consider whether the testimony when reduced to writing as required by law, and lodged with the clerk of the Superior Court, is or is not, in a strict technical sense, a public record.

For the purposes of this case we may concede that the duties of a coroner are of a judicial nature, and that the verdicts of juries and the findings of coroners are in a general sense matters of record. They are results and conclusions of judicial proceedings, and are closely analogous to verdicts and judgments in ordinary courts of justice. In either case the testimony and other oral proceedings are not matters of record unless made so by statute. In behalf of the plaintiff it is contended that the statute does make the evidence before a coroner, when reduced to writing, a part of the record. We do not regard that as strictly true. The legislature required that such testimony should be reduced to writing by a sworn officer and preserved for future reference. It is enough for our present purpose to say that it is a public document relating to matters of public interest, and required by law to be kept by a public officer who is the custodian of the records of judicial proceedings and other public documents. The statute is silent in respect to the purpose for which such writings are preserved, and the use to be made of them, and by whom. In the absence of any limitation or restriction we must assume that it was intended that they might be examined by any and all persons interested in the subject matter. We do not consider that we are justified in saying that they may be inspected by one person and not by another. In the absence of legislation to that effect we cannot say that they are for the exclusive use of one person or officer, or that any one person or class of persons may not inspect or use them.

The writing in question relates to the prosecution of an indictment before the Superior Court. We are asked to allow it to be used by the prosecution, and to sanction a refusal to let it be seen, even, by the defense. We think if the legislature had intended any such distinction it would

have said so.    It has not said so, and we fail to find anything in the statute to justify an implication to that effect.    An attempt is made to find such an implication in that provision of the statute authorizing the inquest or any part of it to be held in private.    No such argument can be legitimately drawn from that provision.    The legislature has not told us why that provision was inserted.    Yet the reason is obvious enough.    The object of the statute is to ascertain, if possible, the guilty party.    If the evidence is likely to implicate some person hitherto unsuspected it may be advisable, in order to prevent an escape, that the proceedings should be in private.    But when a conclusion is reached and the suspected party is arrested, there will ordinarily be no longer any reason for secrecy.    Whatever other reasons may have existed for this clause of the statute, it is hardly possible to discover, either in the statute itself or in any conceivable reason for it, sufficient ground for keeping the testimony private after it shall have been lodged with the clerk.    And so of that clause quoted from section 2016.    The reasons for keeping the witnesses separate are temporary, and cease, and that portion of the statute ceases to be operative, when the witnesses have testified.    Both these provisions have sole reference to the proceedings before the coroner and have no regard to the subsequent use of the testimony by any party in interest.

The argument that the writ ought not to be granted because it is the indicted party who asks for it, is not a very weighty one.    The law presumes every man to be innocent until the contrary appears; and its policy is to give every man accused of crime a reasonable opportunity to prepare and present to a jury his defense.    The state does not desire to procure convictions by any unfair concealment or surprise.    It concerns itself quite as much in having the innocent acquitted as in having the guilty convicted.    While it affords every reasonable facility for the prosecution of offenders, it is no less solicitous to give to every accused person a fair and reasonable opportunity to make his defense.    The statute in the same section requires the coroner

to return to the clerk the testimony, his report of the inquest, including his finding and the verdict of the jury, and also all certificates sent to him by the medical examiner and all similar certificates by him made. It will be noticed that the same language is used with reference to all these papers; all are placed upon the same footing. If this section makes one private all are made so. That all are made so will not be claimed, because the next section, 2012, requires the coroner to make a *record* of the other papers. It seems impossible to find any reason in the statute itself for keeping the testimony private that will not apply equally well to the report of the inquest, finding and certificates. Any arguments for it, aside from the construction of the statute, address themselves to the legislative branch of the government rather than the judicial.

But it is said that the writ is not demandable as a matter of right, but is awarded in the discretion of the court. It is doubtless true that in many cases the court will exercise its discretion. The court however will not refuse the writ where the relator has a clear legal right, there is a substantial matter involved, and there is no other adequate remedy. In this case, as we have seen, the relator has a clear legal right. He is indicted for a crime the punishment of which is imprisonment for life. We cannot say, as matter of law, that the privilege of inspecting this testimony is of trifling importance to him. It may be of very great importance; therefore the writ should not be refused on that ground.

Again. It is contended that the relator has other remedy —that he may obtain information as to the testimony from other sources. The legislature has seen fit to place within his reach the means of obtaining reliable information with little trouble and expense; why should he be put to greater trouble and expense to obtain information of a less reliable character? Besides, this consideration, so far as it has force, is an argument against the defendant on the main question. It is somewhat absurd to suppose that the legislature intended to withhold from the relator all knowledge as to the

testimony of witnesses, where at the same time he had adequate means of obtaining such knowledge from other sources.

We are not unmindful of the argument that there may be cases in which a wise public policy would seem to require that facts and circumstances ascertained by the state in the course of its investigation by the coroner, should not be made public. Hence we have carefully considered the statute to see if it admits of any discretion in the coroner, the clerk or the court, and are unable to find that it does. If such discretion is desirable it will be for the legislature to make provision for it.

The Superior Court is advised to issue the writ of mandamus.

In this opinion PARDEE and BEARDSLEY, Js., concurred. PARK, C. J., and LOOMIS, J., dissented.