## STATE OF CONNECTICUT
vs.
## T. FRANK HAYES, ET AL.

Superior Court      New Haven County      File #6026
(At Waterbury)

MEMORANDUM FILED JULY 14, 1938.

For appearances, see *State vs. Hayes,* 6 Conn. Sup. 215.

INGLIS, J. The question as to whether an accused should be allowed to inspect documents which are in the custody of the state's attorney (whether they have come there through grand jury proceedings or otherwise), although it may at first blush seem to be similar to the question as to his right to inspect grand jury minutes, is in reality fundamentally different. The record of the testimony before the grand jury is not evidence admissible on the trial of the accused to prove the truth of facts testified to. Documents and records in the possession of the state's attorney are, or at least may be, admissible as evidence on the trial. Accordingly, an accused is not apt to be faced on the trial with the grand jury minutes, unless indeed it be a transcript of his own testimony before the grand jury and that he has full knowledge of anyway, but he is apt to be faced with documents, records and other physical evidence which the state's attorney has in his possession. Very often documents and records need careful analysis in order to ascertain their true significance and there is no time to make that analysis during a trial. Moreover, the fundamental reason for the rule denying the right to inspect grand jury minutes in preparation for trial is that it permits successful tampering with witnesses to the end that their testimony may be changed or colored. That reason does not obtain with reference to written or printed evidence. Mere inspection of written or printed documents can not result in those documents being altered.

Wigmore on Evidence (2nd ed., 1923), volume 3, section 1859g, with reference to criminal procedure, says: "At common law, no right of inspection of documents before trial was conceeded to the *accused*....considerations of fairness (however) . . . call also for conceding the opportunity of inspection of documents; the danger of an unscrupulous tampering with documents, and the possibility of manufacturing a refutation, are here far less than for witnesses . . . Thus far, however, this just concession has been made in only a few jurisdictions."

The reason why at common law inspection of documents was denied is ably explained by Cardozo, Ch. J., in *Peo. ex rel. Lemon vs. Supreme Court*, 245 N.Y. 24, 156 N.E. 84. He points out that discovery and disclosure as we know it in civil

procedure is only either equitable or statutory procedure, and therefore, was not recognized in the common law courts in the early days. He goes on to say (p. 29): "When we turn to criminal causes, we find a jurisdiction that is even more restricted. There are expressions of opinion that deny the jurisdiction altogether. There are others that seem to limit the disclosure to documents that are the subject of the charge. . . . Others concede or assume a broader jurisdiction, one adequate to prevent a failure to justice, yet narrower than discovery in equity or under the statutory substitute."

Certainly the modern trend of authorities in this country is to hold that it is discretionary with the Court in a criminal case to allow an inspection of documents or other articles in the possession of the state's attorney and that that discretion ought to be exercised in favor of the accused when the documents sought are the very subject of the charge and admissible in evidence, and it is necessary for a fair presentation of the case on trial that the accused inspect them in advance of the trial. *Massie vs. Peo.* (Colo.), 258 Pac. 226; *State vs. Colson* (Mo.), 30 S.W. (2d) 59; *Peo. vs. Miller,* 257 N.Y. 54, 177 N.E. 306; *State vs. DiNoi* (R.I.), 195 Atl. 497.

The policy of the law of Connecticut on the subject was laid down in 1887 in *Daly vs. Dimock,* 55 Conn. 579. That was a mandamus proceeding brought by one accused of murder to compel the clerk of the Court to permit the accused to inspect the testimony taken before the coroner, which testimony in accordance with the statute had been filed with the clerk. At page 589 the Court says: ":The argument that the writ ought not to be granted because it is the indicted party who asks for it, is not a very weighty one. The law presumes every man to be innocent until the contrary appears; and its policy is to give every man accused of crime a reasonable opportunity to prepare and present to a jury his defense. The state does not desire to procure convictions by any unfair concealment or surprise. It concerns itself quite as much in having the innocent acquitted as in having the guilty convicted. While it affords every reasonable facility for the prosecution of offenders, it is no less solicitous to give to every accused person a fair and reasonable opportunity to make his defense." The Court pointing out the fact that under the statute the transcript of the testimony before the coroner was a public record, directed the Superior Court to order the clerk to permit the accused person to inspect it. From this,

it is clear that it is the policy of our law to open to the inspection of a person accused of crime at least such documents as are public records if such inspection is reasonably necessary for an adequate preparation of the accused's defense.

In this case, except that in some instances an accused asks leave to inspect his own books and papers taken from him in the grand jury proceedings, which request obviously should be granted, the only documents or records which are specifically referred to in the motions as being the objects of the inspection sought are the records of the City of Waterbury. These are public records. Except for the fact that they had been impounded as evidence they would have been open to the inspection of any person who had a personal and legal interest therein. (Note) 27 L.R.A. 82; (Note) 60 A.L.R. 1356. They, therefore, come squarely within the group of documents which *Daly vs. Dimock, supra,* holds should be open to the inspection of an accused.

Here also we are not faced with the difficulty with which the old common law courts were faced, namely, the contention that the courts not having equitable jurisdiction had no power to order the prosecutor to permit an inspection of articles in his possession. In the present case all of the documents and records in question were in evidence as exhibits before the grand jury, which was an arm of the Court. When the grand jury made its report the Court ordered the exhibits turned over to the special state's attorney "subject to the order of the Court." They are now, therefore, impounded with the special state's attorney, subject to the Court's order and control.

It is to be noted that the information charges that one of the unlawful methods used by the conspirators, in pursuance of the conspiracy, to accomplish the alleged purpose of defrauding the City of Waterbury, was the manipulation of the checks, records and books of the city. Accordingly, these checks, records and books are of the very subject matter of the charge against these accused. For that reason in any jurisdiction which permits inspection at all they are just the sort of things, inspection of which would be granted.

That it is necessary for the accused in the adequate preparation of their defense to inspect these documents and records is apparent. It is apparent from the information and the grand jury's report that on the trial they are going to be

faced with these documents and the contention made that these documents and records tend to prove that the city's funds have been improperly used and that the documents and records themselves have been so manipulated as to conceal that improper use. It would obviously be unfair to the accused to expect them on the spur of the moment on the trial to meet the inferences which the State will claim are to be drawn from these documents without having had an opportunity to inspect them in advance. A fair administration of justice, therefore, demands that the Court exercise its discretion at least to the extent of ordering an inspection of such of the documents and records of the City of Waterbury as the accused have asked in these motions.

The prayers contained in the various motions of the respective accused are so different from each other that the motions must be passed upon separately or at least in groups, and that will now be done.

The accused Olsen moves for permission to view the checks claimed to have been paid to him. In so far as such checks now in the possession of the state's attorney came from the records of the City of Waterbury, the motion is granted.

The accused Fleming, Crary, Shanahan, Slavin, Minor and Johnston in their motion for inspection of minutes of the grand jury (6 Conn. Sup. 230) incidentally move for permission to inspect the exhibits given by them respectively to the grand jury. That portion of their motion is granted.

The accused O'Connor's motion to view checks, i.e., the checks claimed to have been paid to him, is granted in so far as those checks formed a part of the records of the City of Waterbury. He has also moved to inspect the vouchers and checks and papers designated "Request for Reimbursement of Petty Cash Fund" and similar documentary evidence, and that motion is granted.

The motions of Philip Coppeto and Ralph Coppeto "For Inspection And Examination Of Records And Etc." are granted. These accused also move for the return of bank checks, papers and documents belonging to them respectively and those motions are denied. The statutory motion for disclosure and discovery applies only in civil cases and as such is not known to criminal procedure. The motions of these two defendants so entitled are denied.

The motions of Santalucia and Healey for permission to view the checks claimed to have been paid to each of them respectively are granted. Their motions for a return to them respectively of the books and records taken from them are denied.

The accused Alderman in his "Application To Inspect And Examine The Transcript Of The Testimony Given Before The Grand Jury" incidentally prays permission to examine "the books, papers, documents and records introduced before and examined by said body." That application is too vague in its reference to books and papers to be granted in general terms. Upon the application, therefore, it is ordered that he be permitted to inspect such books, papers, documents and records as are or were a part of the records of the City of Waterbury and are now in the possession of the special state's attorney.

The motion of the accused Pietraroria to view the checks claimed to have been paid to him is granted.

In connection with the motion of the defendants, Kingsley, Murray and Meany, for an inspection of the grand jury minutes, those defendants ask permission to inspect "a large volume of documents represented by records of the City of Waterbury and of annual audits and reports made by the accounting firm with which these defendants are connected." Upon that motion, it is ordered that these accused may inspect such documents as the special state's attorney has in his possession which are records of the City of Waterbury and the annual audits and reports referred to if they came from the custody of the city.

Where an inspection is ordered herein, it may be made by the accused upon whose application it has been ordered and by his attorney and by any certified public accountant who represents him or any of them. It shall be had at such reasonable time and place as shall be designated by the special state's attorney and after reasonable notice of the time and place given by the special state's attorney to the respective attorneys for the accused by mail. At such inspection, the accused or his representatives may make copies of any of the documents or records which under this order they are entitled to inspect respectively. The inspection shall be made in the presence of a representative of the state's attorney if he desires to have such a representative present. Each accused and his

representatives shall be given access to the documents and records which he is entitled to inspect under this order for such a period of time as is reasonably necessary to permit full inspection and copying of said records and documents and the whole inspection shall be subject to such further order of the court as may be entered to accomplish justice or to secure a speedy trial of the case.