HAROLD V. LAMBLE, ALIAS GEORGE BRANDON, PLAINTIFF IN ERROR, v. THE STATE OF NEW JERSEY, DEFENDANT IN ERROR.

Argued March 1, 1921—Decided June 20, 1921.

1. When two persons have been indicted jointly, charged in one indictment, for the commission of the same crime, the trial court has power in its discretion to order a separate trial for each. A severance may properly be granted for the purpose of permitting one of the defendants, who has pleaded to the indictment, to become a witness for the state, on the separate trial of his companion in guilt.

2. It is not error for the trial court, in a criminal case, to refuse the defendant permission to examine jurors, when called, as to their qualification, without first interposing a challenge for cause. This has been the settled practice in criminal cases in New Jersey since 1824. The act (*Pamph. L.* 1911, *p.* 220; *Comp. Stat. Supp.*, *p.* 840) does not change this practice; that act, in this respect, applies only to civil cases.

3. The refusal by the trial court to permit a witness called by the state to answer a question on cross-examination is not injurious error, when, subsequently, after a searching cross-examination, the question has been substantially answered.

4. It is competent to show in evidence the finger prints upon the door of an automobile, by a photograph thereof, without the production of the door of the automobile, also, to identify the finger prints of the defendant by experts, after the defendant's arrest. *State* v. *Conners*, 87 *N. J. L.* 419, approved and followed.

5. When it has been shown that two persons had been killed by the defendant on trial, it is competent, on the trial of the defendant for the murder of one, to show the locality of the wounds and their description in the two bodies and the similar character of the weapon used, as confirmatory of testimony already adduced. The admission of this evidence for the purpose for which it was offered and admitted was for the trial judge to determine, subject to review, in case of legal injury to the defendant.

On writ of error to the Union County Court of Oyer and Terminer.

For the plaintiff in error, *Frank M. McDermit.*

For the defendant in error, *Walter L. Hatfield, Jr.,* and *Donald H. McLean,* prosecutor of the pleas.

The opinion of the court was delivered by

BLACK, J. The plaintiff in error was convicted of murder of the first degree, without a recommendation by the jury, that the punishment be imprisonment for life. He was found guilty of killing Edith Janney on August 21st, 1918, in the vicinity of West Milton avenue, in the city of Rahway. Her companion, a man named Arthur Kupfer, was killed at the same time. The plaintiff in error, with Charles Perchand, were jointly indicted for the crime. When the trial of the case was moved the prosecutor of the pleas applied for a sever-

ance. This was granted, over the objection of the plaintiff in error. The purpose of the severance was to qualify Charles Perchand as a witness for the state against the defendant. This is the first specification of a cause for reversal and the first assignment of error. There are in all fifty-one assignments of error and twenty-six specifications of causes relied upon for reversal, under the one hundred and thirty-sixth section of the Criminal Procedure act. We have made a critical examination of the record and a careful consideration of the alleged errors, with the result that we find no error or injury done the defendant at the trial that leads to a reversal. We think the judgment should be affirmed. It would serve no useful purpose to discuss at length the alleged errors and specifications of causes for reversal in detail. Those, however, which seem to call for some discussion are these—first, the error assigned on the order of the trial court directing the two persons accused should be tried separately. This court has already said, in the case of *Roesel* v. *State*, 62 *N. J. L.* 216: "The power of the court to order several accused charged in the same indictment to be tried separately is well settled." This point requires no discussion. So in *State* v. *Baum*, 64 *Id.* 410, it was said it was within the discretion of the trial court to grant separate trials when two are jointly indicted. So it has been decided the trial court may properly grant a severance for the purpose of permitting one of the defendants, who has pleaded to the indictment, to become a witness on the part of the state on the separate trial of his companion in guilt. *State* v. *Brien*, 32 *Id.* 414. In that case, this topic is fully discussed by Chief Justice Beasley in an elaborate opinion, in which he reviews the English and American authorities. *State* v. *Graham*, 41 *Id.* 15; *Noyes* v. *State*, *Id.* 418. We have considered this alleged error as if objection had been interposed when Perchand was called to the stand as a witness. It cannot properly be raised under an objection to a severance. The next contention is, the trial judge erred in refusing to permit the plaintiff in error to examine jurors when called as to their qualifications without first interposing a challenge for cause.

It is not denied that prior to 1911 the law in New Jersey has been settled ever since the time of Chief Justice Kirkpatrick, in 1824, to the effect that before examining a juror on his *voir dire* the defendant was required to interpose a principal challenge or a challenge to the favor. *State* v. *Zellers*, 7 *N. J. L.* 220, 223.

The soundness of this mode of procedure is forcibly vindicated by Chief Justice Magie, speaking for this court, in the case of *Clifford* v. *State*, 61 *N. J. L.* 217. But it is argued the statute (*Pamph. L.* 1911, *p.* 220; *Comp. Stat. Supp., p.* 840) has changed the law on this point. But our reading of the provisions of the statute appealed to satisfies us that it has application on this point only to civil cases. True it is, the first section of that statute provides that challenges for any cause whatever, in any action or suit, civil or criminal, in any court of this state, may be made at any time before the juror is actually sworn. The next two sections refer to civil suits or actions. The words in section 3 "such peremptory challenge" manifestly refer to section 2, *i. e.*, a civil suit or action in any court of this state. The first section is a copy of the act of 1887: *Comp. Stat., p.* 2978, ¶ 43*A*. The remaining sections were added when the statute was passed by the legislature in 1911. *Clifford* v. *State, supra,* was followed by this court as late as 1919 in the case of *State* v. *Palmieri*, 93 *N. J. L.* 195. There was no error in the ruling of the trial court on this point.

Next, it is argued it was harmful error to exclude on the cross-examination of the witness Charles Perchand the following question: "At the time you gave the statement in writing to Galation, of the prosecutor's office, did he tell you that the defendant here had told him that you were the man that had committed that crime?" It is argued by the plaintiff in error that this question was proper cross-examination. The answer of the state is, that it was immaterial what was told to the witness Perchand at the time he gave a statement in the prosecutor's office, as no reference to the statement was made in Perchand's direct examination. The statement itself was not offered by the state or referred to in any way. The record

shows the witness was subjected to a searching cross-examination, in the course of which these questions were put to the witness:

"*Q.* Don't you know that Brandon had written from Auburn prison a letter to Galation, in the prosecutor's office, in which he charged you and your brother and Steve with the murder at Rahway, don't you know that?

"*A.* I don't know anything of the sort.

"Mr. McDermit—I will put Galation on the stand; I have got the letter.

"*Q.* You were informed at Auburn prison that this man, who was in Auburn prison, had written to the prosecutor's office of Union county charging you and your brother and Steve with the commission of this crime?

"*A.* I was not.

"*Q.* Never knew that?

"*A.* I was not informed.

"*Q.* You never knew that he had written a letter from the Auburn prison charging you people with this murder, is that right?

"*A.* I never knew that.

"*Q.* Did you ever hear it before I told you now?

"*A.* I don't believe he has ever written a letter of that kind.

"*Q.* Did you ever hear it before I told you now?

"*A.* No."

It may be conceded that the rejected question was competent and proper on cross-examination, either to show the mental attitude of the witness or for the purpose of contradiction. To affect the credibility of the witness by showing his answer to be untrue. But both of these purposes have been accomplished by the testimony above referred to. It is difficult to see how the defendant could possibly be injured. We think this was not legal error. What Chief Justice Beasley said, speaking for this court in the case of *Hunter* v. *State,* 40 *N. J. L.* 495, 543, is pertinent, that in addition to the existence of error in law, it must be shown that such error was or might have been prejudicial to the defence on the merits,

citing paragraph 89 of the Criminal Procedure act (now a part of section 136), and the case of *Donnelly* v. *State*, 26 *Id.* 463, 493.

The next contention is with relation to the testimony of Edward H. Schwartz, the finger print expert. He qualified as such expert. His testimony was that in the last fifteen or twenty years he had examined about fifteen thousand subjects, "meaning ten fingers to a subject." He testified that he had taken the finger prints of the defendant; he had compared them with the finger prints found on the door of the automobile, and they were the same. He produced photographs of those finger prints. They were admitted in evidence. The argument made is, that this testimony was incompetent, so far as the finger prints on the automobile door were concerned, because the door itself ought to have been produced, but this has been decided by our Supreme Court the other way, in the case of *State* v. *Connors*, 87 *N. J. L.* 419. In that case it was held competent to show by a photograph the finger prints upon the column or balcony post of a house without the column being produced in court. We can see no distinction in principle why the photograph of finger prints on an immovable body may be admissible, while those on a substance that can be moved may not be admissible. It is not unlike the case of *State* v. *Hill*, 65 *Id.* 626. That case upheld proof that certain articles taken from the prisoner's coat pocket were admissible, although the coat was not but could have been produced. This class of evidence was examined and discussed by this court in the case of *State* v. *Cerciello*, 86 *Id.* 310. There is a scientific basis for the system of finger-print identification. The courts are justified in admitting this class of evidence. This method of identification is in such general and common use that the courts cannot refuse to take judicial cognizance of it. *People* v. *Jennings*, 252 *Ill.* 534; 43 *L. R. A.* (*N. S.*) 1206; 16 *C. J.* 755, ¶ 1550; *People* v. *Roach*, 215 *N. Y.* 592. The expert, Edward H. Schwartz, was asked the following question: "What is considered the probability of two prints, each taken from different persons, being similar or alike?" to which the answer was, "the Encyclopedia Britannica gives

the probabilities as one in sixty-two billions." Mr. McDermit, the defendant's attorney, said: "I ask to strike it out, and I object to the quotation from the Encyclopedia Britannica; that quotation cannot come from his memory in court; it must come from the book itself. He tries rather to back his opinion by quoting the Encyclopedia Britannica." The court refused to strike out this answer; no objection was taken to the ruling of the court. It cannot, therefore, be considered on the assignments of error, but only under the one hundred and thirty-sixth section of the Criminal Procedure act. It may be conceded the reference to the Encyclopedia Britannica was improper under the case of *New Jersey Zinc Co. v. Lehigh Zinc Co.*, 59 *N. J. L.* 189, but we think it cannot be said the answer to the question constituted manifest wrong and injury under the one hundred and thirty-sixth section of the Criminal Procedure act.

The only other point that seems to call for a reference in this discussion is the alleged error in admitting the evidence of Dr. Ray T. Monger, with relation to the two bullet wounds found in the body of Arthur Kupfer, the dead girl's companion, because it related to a homicide other than that for which the defendant was being tried; but this did not render the testimony incompetent. The admission of this testimony was for the trial judge to determine, subject to review in case of legal injury to the defendant. We think this testimony was properly admitted by the trial judge. *State v. Deliso*, 75 *N. J. L.* 808, 817. The record reveals that Charles Perchand, a witness for the state, had already testified the defendant was guilty of the double killing, proof of the locality of the wounds, their description in the two bodies and the similar character of the weapon used were merely confirmatory of Charles Perchand's testimony. This evidence was properly permitted to be given.

The criticism aimed at the charge of the trial judge is not justified when the entire charge is read. Our reading of the charge satisfies us that it contains only accurate statements of the law, their proper application to the facts, within the rules laid down by this court for the guidance of trial courts.

The other assignments of error and the specifications as causes for relief or reversal not discussed indicate to us that no wrong or injury was done to the plaintiff in error in the trial of his case.

The result is the judgment of the Union County Court of Oyer and Terminer is affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, MINTURN, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, JJ. 9.

*For reversal*—THE CHIEF JUSTICE, SWAYZE, PARKER, KALISCH, JJ. 4.