The People of the State of New York, Respondent, *v.* Frank Jones, Appellant.

Fourth Department, May 3, 1939.

*Frank Jones*, in person for himself.

*Harry M. Stacy, District Attorney*, for the respondent.

Dowling, J. On the night of October 21, 1937, the business house of the Parish Oil Company of Parish, Oswego county, N. Y., was broken into, the safe was blown and one dollar in United States currency was taken from the safe. The fact that a burglary, with all the concomitant circumstances of such a crime, had been committed was self-evident. The only clue to the perpetrator of the crime was a fingerprint left upon the door of the safe.

The State Police were summoned. They developed this fingerprint and on comparing it with the fingerprints of one Frank Jones which they had taken in connection with an earlier arrest on a charge of burglary in the third degree discovered that the fingerprint upon the safe corresponded with the fingerprint of the middle finger of the left hand of said Jones. On the strength of this evidence, Frank Jones was indicted in Oswego county on Janu-

ary 10, 1938, for burglary in the third degree and petit larceny. The indictment was moved for trial on the 9th of February, 1938. The defendant was represented by counsel assigned to him by the court.

The People's testimony was purely circumstantial. It consisted of the fact that the place had been broken into, the safe had been blown and looted of one dollar in United States currency and that a fingerprint had been left upon the door of the safe. To connect the defendant with the fingerprint left upon the safe the State called two fingerprint experts, who testified that they had compared the known fingerprints of the accused with the fingerprint left upon the safe and they gave it as their opinion that the fingerprint on the safe was identical with the known fingerprint of the middle finger of the accused's left hand. The People also established that the prisoner did not have lawful access to and had not been at the place burglarized under such circumstances that the presence of the fingerprint upon the door of the safe could be accounted for upon any hypothesis of his innocence. No other testimony tending to connect the defendant with the commission of the crime was given. The defendant did not testify in his own behalf nor did he attempt to prove an alibi or to show that the fingerprint on the safe was not his, or, if it was his, to account for its presence upon the safe. The case was submitted to the jury in a fair and comprehensive charge to which no exception was taken. The court left it to the jury to say whether or not the fingerprint on the safe was that of the defendant. The jury found that it was and returned a verdict of guilty as charged in the indictment. Counsel for the defendant moved to set aside the verdict and for a new trial " on the grounds that the verdict is against the weight of the evidence, is contrary to the evidence, and contrary to law." The motion was denied with an exception to the defendant. The district attorney thereupon filed an information charging that the defendant had been convicted of two previous felonies, to wit, the crime of extortion in the United States District Court for the Northern District of New York and the crime of burglary in the third degree in the County Court of Cayuga county, N. Y. The defendant admitted that he was the Frank Jones mentioned in the information. Whereupon the court sentenced him for a term of not less than ten nor more than twenty years in Attica State Prison. From the judgment of conviction entered the defendant appeals.

We have for review the interesting question whether, when the only evidence of identity against an accused person depends upon the resemblance between fingerprints, such evidence is sufficient

to support a conviction. This precise question, so far as we can discover, has never been passed upon by the courts of this State but it was before the High Court of Australia in 1912 on an application for leave to appeal to that court from a judgment of conviction rendered in the Supreme Court of Victoria in *Parker* v. *The King* (14 C. L. R. Austr. 681; 3 B. R. C. 68). The defendant was tried and convicted on a charge of breaking into a shop and stealing therefrom the contents of a safe. The only evidence against him depended upon a comparison of one of several fingerprints found on a bottle which was in the shop with a print of the middle finger of Parker's left hand taken while he was in jail. The court in denying the application said (at p. 69), " Signatures have been accepted as evidence of identity as long as they have been used. The fact of the individuality of the corrugations of the skin on the fingers of the human hand is now so generally recognized as to require very little, if any, evidence of it, although it seems to be still the practice to offer some expert evidence on the point. A fingerprint is therefore in reality an unforgeable signature. That is now recognized in a large part of the world, and in some parts has, I think, been recognized for many centuries. It is certainly now generally recognized in England and other parts of the English dominions. If that is so, there is in this case evidence that the prisoner's signature was found in the place which was broken into, and was found under such circumstances that it could only have been impressed at the time when the crime was committed. It is impossible under those circumstances to say there was no evidence to go to the jury."

In *Stacy* v. *State* ([Okla. Cr. App.] 292 P. 885) Stacy was convicted of burglary in the second degree. His conviction rested entirely on circumstantial evidence. The business house of one Wallis was broken into and the vault and safe looted of seventy dollars. The fingerprints of Stacy were found on the door of the vault. There was no other testimony tending to connect Stacy with the commission of the crime. On appeal he contended that the evidence was insufficient to sustain a conviction. In affirming the judgment of conviction the court said (at p. 887), " We have no doubt but that the finding of the fingerprints of the defendant on the door of the vault, with the further proof that defendant did not have access to and had not been at the place burglarized so that the prints could be accounted for upon any hypothesis of his innocence, is a circumstance irresistibly pointing to his guilt. In conformity to decisions of the courts in many States, we take judicial knowledge that there are no two sets of fingerprints exactly alike."

In *Castleton's Case* (3 Crim. App. 74) the Court of Criminal Appeal in England, in 1909, by dismissing an application for leave to appeal, approved of a conviction for burglary where the only proof of identification was evidence as to fingerprints upon a candle left behind. This case is referred to in *People* v. *Roach* (215 N. Y. 592, 604). In the *Roach* case the defendant was convicted of murder in the first degree. There was evidence of marks found upon the clapboards of the house where the crime had been committed. An expert testified that the marks were marks of fresh blood upon the finger ends of a human hand and from impressions taken of the left hand of the accused the expert gave as his opinion that the marks on the clapboards were the fingerprints of the left hand of the accused. The court held that this testimony was properly admitted. Judge SEABURY, writing for the court, said (at p. 605): "The fact that error may sometimes result in effecting identification, by this means [fingerprints] affords no reason for the exclusion of such evidence. Mistakes may also occur in effecting identification by personal appearance, casual meeting, by handwriting or by one's voice heard in the dark or over the telephone, but evidence of this character is admissible and its weight is to be determined by the jury. Courts have often allowed proof of circumstances apparently very trivial as evidence upon which identification might be effected. (*State* v. *Rainsbarger*, 74 Ia. 196; *Wilbur* v. *Hubbard*, 35 Barb. 303.) The evidence of the expert as to the identity of the fingerprints of the defendant, with the blood marks found upon the clapboards of the house, was a proper subject for the consideration of the jury. The weight to be given to this evidence was for the jury, not the court, to determine."

That the State of New York recognizes the vital part which fingerprints play in the identification of criminals is manifested in section 482-b of title IX of part IV and in title X of part VI of the Code of Criminal Procedure.

The State's expert, LePointe, testified that he was a fingerprint expert in the Division of Police, State of New York, that he examined the safe on the morning of October twenty-second and that he found a latent fingerprint on a section of the door which had been folded back by the force of the explosion when the safe was blown, that he developed this latent fingerprint and photographed it and compared it with the fingerprints of the defendant which he had taken in 1936 and that he found twenty-six points of similarity between the fingerprint upon the safe and the fingerprint of the middle finger of the left hand of the defendant, and that in his

opinion the fingerprint on the safe was made by the left middle finger of the defendant. The State's expert, Knowles, testified that he was a specialist in fingerprinting and identification at the Federal Bureau of Investigation in Washington, D. C., that he had examined about 100,000 latent fingerprints from which he had made about 25,000 identifications, that he compared the known fingerprints of the defendant with the latent fingerprint taken from the safe and had marked fourteen points of similarity between the two and that the latent fingerprint and the known fingerprint of the middle finger of the defendant's left hand were identical, that fingerprints of a person, unless destroyed by external means, never change from birth to death, that there are no two sets of fingerprints identical unless they are made by the same fingers of the same person.

The defendant called two witnesses who testified that they had examined the safe the morning of October twenty-second but had seen no fingerprints thereon. Both admitted, however, that they had not examined the reverse side of the flap upon which the latent fingerprint was found.

The late Sir Edward Henry, one of the most distinguished experts of his day in the use of fingerprints for identification in criminal matters, is said to have made calculations to demonstrate that there was only one chance in 640,000,000,000 of two fingerprints being identical. On this basis the identity of fingerprints " might well be deemed to satisfy that cardinal requirement of criminal jurisprudence for proof beyond a reasonable doubt." (See 65 U. S. Law Rev. p. 185, No. 4, April, 1931.) In 11 Ruling Case Law, section 47, page 628, the author remarks: " The fact that every finger tip has a series of convolutions in the skin surface, no two of which are alike, and which students of the subject can classify and describe so as to facilitate search, has made identification of the guilty person almost certain whenever a clear impression of bloody or dirty fingers has been left on the scene of a crime. * * * This system of identification is of very ancient origin, having been used in Egypt when the impression of the monarch's thumb was used as his sign manual." In *Commonwealth* v. *Bartolini* (—— Mass. ——; 13 N. E. [2d] 382), a Massachusetts case, the court had under review an appeal from a judgment of conviction of murder in the first degree. One of the grounds of error assigned was the admission of evidence of the naked footprint of the condemned man found on the linoleum which covered the floor of a bathroom at the scene of the crime. In holding that the testimony was competent, the court said (at p. 388): " There was also ample evidence

that footprints, like fingerprints, remain constant throughout life and furnish an adequate and reliable means of identification."

The Court of Appeals, in *People v. Schlenker* (261 N. Y. 669), reversed a conviction for the crime of petit larceny where the only evidence identifying the defendant as the perpetrator of the crime was the similarity of the tracks of his shoes and the tracks of his automobile with tracks found at the scene of the larceny. The editor of the New York Law Journal, February 3, 1939 (Vol. 101, No. 28, p. 540), in discussing "Fingerprints and Footprints," had this to say: "Of course, neither footprints nor shoeprints have attained to the probative dignity of fingerprints in the administration of the criminal law." The reason for the distinction between the two is quite obvious.

The defendant complains of prejudicial remarks alleged to have been made by the district attorney in his summation. His address to the jury is not in the record and we are not at liberty to consider it. In any event, no objection was made to anything that was said in his summation.

The fingerprints shown on the enlarged prints are clear and distinct, and, with the aid of the expert testimony, prove beyond a reasonable doubt that the fingerprint found on the safe was made by the middle finger of the defendant's left hand. Expert testimony in aid of these prints was proper. (*Marion v. Coon Construction Co.*, 216 N. Y. 178, 182.) In the absence of evidence showing either that the fingerprint found upon the safe was not that of the defendant, or, if it was, that it was placed there innocently, the jury were justified in finding that the defendant was the guilty party and that he committed the crimes charged beyond a reasonable doubt. The weight to be given to the testimony relative to the fingerprints was for the jury and not for the court. (*People v. Roach, supra,* p. 605.)

In our judgment the facts and circumstances upon which the jury reached their verdict are of such character as to exclude every reasonable hypothesis other than that of the defendant's guilt and are not only consistent with his guilt but are inconsistent with his innocence, and this is all the proof that is required to warrant a conviction in a criminal case. (*People v. Trimarchi,* 231 N. Y. 263, 267.)

There being no rulings or defects which in any degree tended to prejudice the substantial rights of the defendant, the judgment of conviction should be affirmed.

All concur. Present — SEARS, P. J., CROSBY, LEWIS, CUNNINGHAM and DOWLING, JJ.

Judgment of conviction affirmed.