THE PEOPLE OF THE STATE OF NEW YORK ex rel. ELMER H. LEMON, District Attorney of Orange County, Respondent, *v.* THE SUPREME COURT OF THE STATE OF NEW YORK et al., Appellants.

**Crimes — discovery — prohibition — order for discovery of notes or memoranda in possession of prosecutor improper — order of prohibition properly issued to restrain enforcement of such an order.**

1. Courts are without power to require a district attorney to file in the office of a county clerk for inspection by a defendant before trial, statements, notes or memoranda in his possession relative to the crime charged against defendant but inadmissible as evidence either for prosecution or defense.

2. An order of prohibition restraining all proceedings for the enforcement and execution of such an order is proper. Even though the order had been entered before prohibition was invoked, its force had not been spent nor its capacity for harm exhausted.

*People ex rel. Lemon* v. *Supreme Court,* 219 App. Div. 725, affirmed.

(Argued February 21, 1927; decided March 29, 1927.)

People ex rel. Lemon *v*. Supreme Court.    **25**

1927.]                        Points of counsel.                        [245 N. Y. 24]

Appeal, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered January 14, 1926, making final and absolute an alternative order of prohibition, theretofore granted, and directing that defendants desist from further proceedings in respect to a motion to compel the district attorney of Orange county to file certain documents.

*Henry Hirschberg* for appellants. The Supreme Court had inherent power to grant the order of inspection which order has been prohibited by the Appellate Division. (*People ex rel. Livingston* v. *Wyatt*, 186 N. Y. 383; *People ex rel. Hummel* v. *Davy*, 184 N. Y. 30; *People ex rel. Jones* v. *Sherman*, 66 App. Div. 231; 171 N. Y. 684; *People ex rel. Weeks* v. *Platt*, 173 App. Div. 451; *People ex rel. Martin* v. *Brady*, 168 App. Div. 108; *People ex rel. Newton* v. *Wagner*, 193 App. Div. 463; *People ex rel. Patrick* v. *Fitzgerald*, 73 App. Div. 339; *Nicholas* v. *Farmers Loan & T. Co.*, 215 App. Div. 547; *Matter of Steinway*, 159 N. Y. 250; *Jones* v. *People*, 79 N. Y. 45; *People ex rel. Swann* v. *Gen. Sessions Judges*, 115 Misc. Rep. 454.) The Supreme Court had jurisdiction under Code of Criminal Procedure to determine if the documents directed to be filed were a part of the support for the Police Court information, and as such filable under said Criminal Code. (*People* v. *Cramer*, 22 App. Div. 189; *People* v. *Gardner*, 71 Misc. Rep. 335; *Tanzer* v. *Breen*, 139 App. Div. 10; *People ex rel. Levy* v. *Preston*, 44 Misc. Rep. 267; *McKelvey* v. *Marsh*, 63 App. Div. 396; *People ex rel. Livingston* v. *Wyatt*, 186 N. Y. 383; *People ex rel. Brown* v. *Tighe*, 146 App. Div. 491; *People ex rel. Perkins* v. *Moss*, 187 N. Y. 410; *People ex rel. Kingsley* v. *Pratt*, 22 Hun, 300; *People* v. *McIntosh*, 5 N. Y. Crim. 38; *People* v. *Gage*, 149 N. Y. Supp. 43.) The Special Term decided the motion in the criminal case, signed the order directing the filing of the documents so that defendant could have an inspection thereof and the order was

26    People ex rel. Lemon *v.* Supreme Court.

[245 N. Y. 24]    Opinion, per Cardozo, Ch. J.    [Mar.,

entered in the clerk's office and served upon the district attorney with notice of entry before he instituted the alternative prohibition proceeding in the Appellate Division and hence, there was no jurisdiction in the Appellate Division to grant the order of prohibition as there remained no further judicial action of the Special Term to prohibit. (*People ex rel. Livingston* v. *Wyatt*, 186 N. Y. 383; *People* v. *Supervisors, Queens Co.*, 1 Hill, 201; *Ex parte Braudlacht*, 2 Hill, 367; Fiero on Particular Actions & Spec. Pro. [4th ed.] 2773.)

*Elmer H. Lemon, District Attorney,* for respondent. The order of prohibition was proper, as the lower court had no power to compel the district attorney to turn over his evidence to the defendant. (*Swart* v. *Reckard*, 148 N. Y. 264.) There is no inherent power in the Supreme Court to grant the order made in the court below. (*People* v. *Glen*, 173 N. Y. 395; *People* v. *Adler*, 140 N. Y. 331; *People ex rel. Weeks* v. *Platt*, 173 App. Div. 451; *Mann* v. *D., L. & W. R. R. Co.*, 99 Misc. Rep. 358; *People* v. *Keavin*, 123 Misc. Rep. 56; *People* v. *Pirie*, 126 Misc. Rep. 254; *People* v. *Steinhardt*, 47 Misc. Rep. 252; *Matter of Baldwin*, 65 Misc. Rep. 153; *People* v. *Gilbert*, 118 Misc. Rep. 825.) Prohibition was the proper remedy of the People. (*Quimbo Appo* v. *People*, 20 N. Y. 531; *People ex rel. Jerome* v. *General Sessions*, 185 N. Y. 504; *People ex rel. Newton* v. *Special Term*, 193 App. Div. 463; *People ex rel. Sprague* v. *Fitzgerald*, 15 App. Div. 539; 156 N. Y. 689; *Matter of Rice*, 155 U. S. 396.)

Cardozo, Ch. J. The grand jury of Orange county indicted Lucy Earley on October 7, 1926, for the murder of her husband by poisoning his food. The effect of this indictment was to supersede an information, filed by the District Attorney with the Recorder of the city of Newburgh, charging the same crime. The minutes of the grand jury have been inspected by the defendant under an order of the court. One Wegley, an accomplice, gave testimony

1927.]          Opinion, per Cardozo, Ch. J.      [245 N. Y. 24]

that the defendant had asked him for arsenic to enable her to kill her husband, and had received the poison from his hands. Physicians who had examined the contents of the stomach, gave testimony as to the quantity of arsenic disclosed by the analysis. Other witnesses gave testimony directed to the cause of death and to the methods and agencies through which the poison was administered. A transcript of all this testimony was given to the defendant and is embodied in the record. The defendant was not satisfied with this disclosure of the case against her. She deposed that other evidences not submitted to the grand jury, had been gathered by the District Attorney and she prayed for an order that they be submitted to her scrutiny. The petition was not granted in all its length and breadth. An order was made, however, that the District Attorney file in the office of the clerk of Orange county " (1) each and every written statement, affidavit, letter, memorandum and confession made by William Wegley either directly or indirectly to said District Attorney or any of his assistants, sub-ordinates or employees prior to the filing by said District Attorney of said information in the Recorder's Court of the City of Newburgh; (2) the complete written statements and memoranda of the post-mortem examination of said Daniel F. Earley referred to in said information and all reports made to said District Attorney directly or indirectly or to any of his employees, assistants or agents in connection with this investigation by or on behalf of Dr. Alexander O. Gettler, Dr. Otto H. Schultze, Dr. James C. Donovan and John J. Perrott; (3) all reports and information made directly or indirectly to said District Attorney with reference to any chemical analysis or examination of the organs or parts of the body of Daniel F. Earley or of any fluids or substances prior to the filing in Police Court of the said information by said District Attorney." The order further provided that " said District Attorney be and he hereby is precluded from giving proof on the trial herein of any facts referred

to in any of said documents which he is hereby directed to file and does not file." The entry of that order was followed by a petition for an order of prohibition (Civ. Prac. Act, § 1341). The Appellate Division granted the petition, and restrained all proceedings for " the enforcement and execution " of the order for the filing of the documents. The order of prohibition is now before us for review.

The common-law courts, till aided by statute, professed a lack of power, even in civil causes, to order the inspection of documents in advance of a trial, unless indeed the document to be examined was the very subject of the cause (*Denslow* v. *Fowler*, 2 Cow. 593, note; *McQuigan* v. *D., L. & W. R. R. Co.*, 129 N. Y. 50, 55; *Carpenter* v. *Winn*, 221 U. S. 533). To give relief from these defects, the remedy of discovery and inspection was framed by courts of equity (2 Story, Eq. Juris. § 1484). The remedy as framed involved a separate, if ancillary, suit, and in that respect as well as others was awkward and unwieldy. Statutes, long in force in this State, have made a like remedy available in the primary cause itself by motion or petition. This borrowing of equitable remedies began with the Revised Statutes of 1830 (2 R. S. 199, part III, ch. 1, title 3, §§ 21, 22; *King* v. *Leighton*, 58 N. Y. 383, 384, 385). A party to a suit in the Supreme Court might be compelled " to produce and discover books, papers and documents in his possession or power, relating to the merits of any such suit, or of any defence therein " (§ 21). The successive Codes of Procedure and the Civil Practice Act, extending the same remedy to other courts of record, have carried it down, unchanged in substance, to our day (Code Civ. Pro. § 342; Code Civ. Pro. § 803; Civ. Prac. Act, § 324; also L. 1841, ch. 38). So familiar in civil causes has the remedy become that many who invoke it have forgotten in all likelihood its origin in history as the creature of a statute. Yet even in civil causes, with all the statutory reinforcement of the sparse and narrow remedy, itself " in the nature of a usurpation " (*McQuigan* v. *D., L. & W. R. R. Co.*, *supra*, at p. 55), that had grown

up at common law, the jurisdiction has its limits (Civ. Prac. Act, § 324). Documents are not subject to inspection for the mere reason that they will be useful in supplying a clew whereby evidence can be gathered. Documents to be subject to inspection must be evidence themselves (*Falco* v. *N. Y., N. H. & H. R. R. Co.*, 161 App. Div. 735, 737; *Woods* v. *De Figaniere*, 25 How. Pr. 522, 526, 527; *Knight* v. *Marquess of Waterford*, 2 Y. & C. Ex. 22, 36). No precedent can be found even in civil causes for compelling disclosure, in advance of the trial, of the office notes or memoranda prepared by an attorney after consultation with his witnesses, and summarizing his understanding of the testimony that is likely or expected.

When we turn to criminal causes, we find a jurisdiction that is even more restricted. There are expressions of opinion that deny the jurisdiction altogether. There are others that seem to limit the disclosure to documents that are the subject of the charge, thus assimilating the practice to the jurisdiction in civil causes that was known at common law. Others concede or assume a broader jurisdiction, one adequate to prevent a failure of justice, yet narrower than discovery in equity or under the statutory substitute. Nowhere has there been a suggestion that the jurisdiction can properly be extended to notes or memoranda in the possession of the prosecutor, but inadmissible as evidence either for prosecution or for defense.

The point of departure in any discussion of the subject is the decision of the King's Bench in *Rex* v. *Holland* (4 T. R. [Durnford & East], 691), decided in 1792. An information had been filed by the Attorney-General against an officer of the East India Company upon charges of peculation and corruption. A Board of Inquiry had examined witnesses in India and had made a report upon the matter which was transmitted to England. The defendant applied for an order that he be permitted to examine this report. The court refused the order upon the ground of want of power. "I am extremely clear," said LORD KENYON, Ch. J., "that we ought not to grant

this application. There is no principle or precedent to warrant it. Nor was such a motion as the present ever made; and if we were to grant it, it would subvert the whole system of criminal law." ASHURST, BULLER and GROSE, JJ., spoke to the same effect. " The practice on common law indictments, and on informations on particular statutes, shews it to be clear that this defendant is not entitled to inspect the evidence, on which the prosecution is founded till the hour of trial " (per BULLER, J.).

The report to be examined in that case would have been inadmissible as evidence for prosecution or defense. Later cases exhibit a more conciliatory tendency where the document is one that may be received as an exhibit. Discovery will be ordered if the exhibit is the basis of the charge, as, *e. g.*, where the indictment is for sending a threatening letter (*Rex* v. *Harrie*, 6 Car. & P. 105; cf. *People* v. *Bellows*, 1 How. Pr. [N. S.] 149). There is some authority for the view that it will be ordered in other cases where the thing to be inspected is admissible in evidence and a failure of justice may result from its suppression. Thus, in *Regina* v. *Dorr* (3 Cox C. C. 221) an inspection of the contents of the stomach was permitted in a prosecution for homicide. In *People* v. *Gerold* (265 Ill. 448) a county treasurer charged with defalcation was held to have the right to inspect official books and documents. In *Commonwealth* v. *Jordan* (207 Mass. 259), a prosecution for murder, there was recognition of the power to permit an inspection of portions of the body taken at the time of the autopsy by the medical examiner and also weapons and other exhibits in the possession of the public prosecutor, though the court refused the order in the exercise of discretion. Other cases point the same way with more or less distinctness (See, *e. g.*, *Newton* v. *State*, 21 Fla. 53; *Daly* v. *Dimock*, 55 Conn. 579; *State* v. *Howland*, 100 Kan. 181). The power frequently asserted to compel the return of property illegally impounded is based upon the assumption of a supervisory jurisdiction over the acts of public prose-

cutors (*Weeks* v. *U. S.*, 232 U. S. 383, 398; *People* v. *Chiagles*, 237 N. Y. 193, 199; cf. Kenny, Outlines of Criminal Law, 477, citing *Regina* v. *Puddick*, 4 F. & F. 497). There may be something of kinship here to the power to compel inspection in furtherance of justice. Argument earnestly upholding the latter jurisdiction, though conceding much authority against it, will be found in Mr. Wigmore's treatise (3 Wigmore Evidence, § 1859-g; § 1863; cf. 2 Bishop, New Criminal Pro. [2d ed.] § 959-d.) There are pronouncements, however, to the contrary in the works of learned commentators (2 Russell on Crimes, 1985, 2096, 2098; 9 Halsbury Laws of England, p. 387, § 152; cf. *State* v. *Howard*, 191 Ia. 728).

Little aid can come to the defendant from the decisions in our own State, much relied upon by counsel, which maintain an inherent jurisdiction to permit an inspection of the minutes of the grand jury returning an indictment. The object of such inspection is not to supply the accused with evidence in advance of trial. The object is to lay the basis for a motion to dismiss the indictment where there is reason to believe that the evidence before the grand jury is insufficient or illegal (*Matter of Montgomery,* 126 App. Div. 72). Little aid can come from the decisions which maintain an inherent jurisdiction to compel the service of a bill of particulars explaining or defining an indictment that is general or indefinite (*People* v. *Williams,* 243 N. Y. 162; *Commonwealth* v. *Jordan, supra*). Remedial devices for the correction of uncertainties in pleadings were worked out by the courts, without resort to statute, in aid of civil remedies. There was no greater need of statute when the same remedy was conceded to one accused of crime. What was done was within an acknowledged head of common-law jurisdiction as shaped by precedent and practice. The power to correct a pleading has a genesis in history that has little, if any, relation to the power to compel a disclosure of the proofs. The development of the latter power was due almost wholly to the activities of the Chancellor, who was care-

ful, none the less, with all his injunctions and discoveries, to hold aloof from interference with prosecutions by the Crown. "A bill of discovery," said Lord HARDWICKE (*Lord Montague* v. *Dudman,* 1751, 2 Ves. Sen. 396, 398), " lies here in aid of some proceedings in this court in order to deliver the party from the necessity of procuring evidence, or to aid the proceeding in some suit relating to a civil right in a court of common law, as an action; but not to aid the prosecution of an indictment or information, or to aid the defence of it " (cf. 2 Story, Eq. Juris. § 1494). The supervisory control, whatever it may be, that belongs to courts of common law in respect of a criminal prosecution, is an autochthonous growth, a thing evolving from within. It was not forced upon them from without under pressure of the Chancery.

We have traced the lines of battle, the terrain of the opposing forces. The survey may help in the future to a solution of the conflict. For the moment the clash may be confined to outlying portions of the field. The decision of this case does not require us to affirm or deny the existence of an inherent power in courts of criminal jurisdiction to compel the discovery of documents in furtherance of justice. The beginnings or at least the glimmerings of such a doctrine are to be found, as we have seen, in courts other than our own. A search of precedents in this State yields results that are largely negative, if our scrutiny is confined to criminal prosecutions. On the other hand, the tendency is unmistakable in the field of civil causes to limit the power strictly within the statutory schedules (*McQuigan* v. *D., L. & W. R. R. Co., supra*). Whether apart from statute and beyond it there is a supervisory jurisdiction, as yet unplumbed and unexhausted, in respect of criminal prosecutions, is something that can best be determined at the call of particular exigencies in the setting of the concrete instance. The courts are properly reluctant to abjure the power in advance, or to confine in predetermined formulas the occasions of its exercise. We have a

statute to the effect that the rules of evidence shall be
the same in criminal as in civil causes (Code Crim. Pro.
§ 392).   The provisions of the civil codes for the discovery
of documents are not rules of evidence in the strict sense.
They are closely akin, however, to such rules, for they
govern and define the remedies whereby evidence is
made available.   Those remedies are now so inveterate
and established that they form part of the warp and woof
of the procedural system of the State.   The time has
arrived, so it is argued, when they should be taken over
by the criminal courts, and applied to criminal actions by
a process of analogy.   The appropriation is justified, we are
told, by the germinal developments of a like power in the
courts of other States, by the public policy implicit in the rule
of uniformity of evidence, and by the necessities of justice.

We leave the question open, for if the power exists at
all, this case is not within it.   The most that can be
argued with any show of reason in behalf of the defendant
is that the remedy of inspection in civil causes as now
prescribed by statute is to be applied *in consimili casu* to
criminal prosecutions.   The power in criminal prosecutions
may not improbably be less.   It surely can be no greater.
But the defendant, if subjected to that test, fails to make
out her title to the remedy.   She does not ask, as did the
defendant in *Commonwealth* v. *Jordan* (*supra*), that the
body of the dead man or any part of it be submitted to
her scrutiny or to that of her advisers.   Her demand is that
a prosecutor who has gathered statements from prospective witnesses shall place the statements in her hands
that she may study and repel them.   She does not ask
that she inspect any confession made in her name and
admissible against her.   Conceivably such inspection
may be necessary at times, as, for instance, to enable a
defendant to prove the forgery of a signature.   She asks
that she examine the incriminating statements of a conspirator whose confessions will not be evidence except
against himself.   So far as the record shows, he has not
even been indicted.   If indicted, his trial will be separate

from hers.   The reason why she asks for a disclosure of the statements of the physicians and the chemists is her belief that their statements to the prosecutor were fuller in all probability than their statements to the grand jury already in her possession.   A like reason explains her request for the confessions.   In a word, statements and memoranda collected by the prosecutor 'are to be exhibited to the defendant, though none of them will be admissible either for her or against her if offered at the trial.   She makes no claim that they will be.   She takes the ground that she should have them because study of the evidence will be helpful in preparing her defense.   This is to enlarge the remedy beyond anything permitted by analogy or precedent.

If the statute governing inspection were extended in so many words to criminal prosecutions, the defendant would be unable on such a showing to make good her title to relief.   We have no occasion at this time to consider to what extent inspection might be directed at the trial as an aid to cross-examination after the witnesses had testified (4 Wigmore, Evidence, § 2224).   What concerns us at the moment is the scope of the remedy available in advance.   At such a stage of the contest, a remedy so drastic is within the condemnation of the rule that inspection may not be had for the sole purpose of prying into the case of one's opponent.   The documents to be exhibited must be evidence in support of the cause of action or defense of the party seeking the discovery (1 Pomeroy's Eq. Juris. § 201; Wigram on Discovery, § 342; Hare on Discovery, pp. 183, 189).   But here the objection is even deeper, more incurable.   The documents to be exhibited to this defendant are not evidence for any one. They are merely mnemonic instruments whereby the prosecutor may be better able to elicit evidence hereafter. A mandate giving them publicity is something more than error in the exercise of power.   It is an assumption of power where none has been confided (*Matter of Sawyer*, 124 U. S. 200, 221; *Quimbo Appo* v. *People*, 20 N. Y. 531; *St. Louis R. R. Co.* v. *Wear*, 135 Mo. 230, 256).

We think a proper case is made for an order of prohibition. The order for an inspection of the documents is not the subject of appeal (Code Crim. Pro. § 518). The People are without a remedy unless its enforcement can be checked (*Quimbo Appo* v. *People, supra*). We are not unmindful that the order had already been entered when prohibition was invoked. Its force, however, had not been spent, nor its capacity for harm exhausted. The prosecuting officer, failing to obey it, might find himself exposed to prosecution for contempt. The course of the trial might be changed with the possible result that justice would miscarry, for a penalty of disobedience was to be the exclusion of the evidence. There are decisions that excess of jurisdiction will not be corrected by prohibition when the consequences of judicial action are wholly in the past. We have no occasion to consider whether even these decisions are subject to possible exceptions (10 Halsbury Laws of England, §§ 293, 294). The rule is different, at all events, in cases where "something remained which the court or party to whom the writ was directed might do, and probably would have done, as the collection of costs, or otherwise enforcing the sentence" (*U. S.* v. *Hoffman*, 4 Wall. [U. S.] 158, 162, 163). The court will purge its records when there is menace lurking in the future until the purge is made complete (*People ex rel. Sprague* v. *Fitzgerald*, 15 App. Div. 539; 156 N. Y. 689; *Ferguson* v. *Martineau*, 115 Ark. 317, 323; *St. Louis R. R. Co.* v. *Wear, supra*, at p. 257; *Roberts* v. *Humby*, 3 M. & W. 120; *Farquharson* v. *Morgan*, 1894, 1 Q. B. 552, 563; *Bodenham* v. *Ricketts*, 6 Nev. & M. 170; *London Corp.* v. *Cox*, 1867, L. R. 2 H. L. 239, 283, 388; *Buggin* v. *Bennett*, 4 Burr. 2035).

The order should be affirmed without costs to either party.

POUND, CRANE, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Order affirmed, etc.