HAZEL G. LEWIS, as Administratrix, etc., of JAMES LEONARD LEWIS, Deceased, Respondent, *v.* ROUX TRUCKING CORPORATION, Defendant.

CHARLES J. DODD, District Attorney of Kings County, Appellant.

Second Department, December 28, 1927.

Discovery — subpœna duces tecum — action for death of plaintiff's intestate who was killed in automobile accident — district attorney will not be required to produce evidence given on examination to determine whether crime was committed.

The district attorney will not be required to produce on a *subpœna duces tecum* in an action to recover for the death of plaintiff's intestate arising out of an automobile accident, the evidence given in an official investigation conducted by him to determine whether a crime was committed by the driver of the automobile which caused the intestate's death.

APPEAL by Charles J. Dodd, district attorney of Kings county, from an order of the Supreme Court, entered in the office of the clerk of the county of Kings on the 22d day of October, 1927.

The order appealed from directed the issuance of a *subpœna duces tecum* requiring the district attorney of Kings county to produce upon the trial of the action certain records in his possession.

*Henry J. Walsh, Assistant District Attorney* [*Charles J. Dodd, District Attorney,* with him on the brief], for the appellant.

*Lester Hand Jayne,* for the respondent.

CARSWELL, J.   The order appealed from was made in a civil action brought by Hazel G. Lewis, as administratrix, against Roux Trucking Corporation.   It required the district attorney, who was not a party to the civil action, to produce under *subpœna duces tecum,* " The typewritten or otherwise written record, and also the stenographic record of the questions asked by Assistant District Attorney Eno, or by any other agent of the district attorney, and the answers made thereto by the witnesses William Rourke and Edward J. Gibbons, with respect to the accident occurring on the 4th day of April, 1927, on Liberty avenue just west of Crescent street, in the county of Kings, wherein James Leonard Lewis was killed, which said questions and answers were made on the 7th day of April, 1927."

The action was brought upon a claim that the defendant negligently killed plaintiff's intestate.

The answer of the district attorney is that an official investigation was made into the cause of the accident, and among others the individuals Gibbons and Rourke were examined for the purpose of determining whether a crime had been committed; that the examination of these individuals has not been transcribed by the stenographer who recorded it; that no prosecution of Gibbons has been undertaken, and that Gibbons, following his arrest on a charge of manslaughter, was discharged by the magistrate then presiding in the homicide court; that the statements so taken were taken in the course of official business and duty; that in the course of the examination Gibbons was warned that the statements might be used against him and that said statements, so taken, are the confidential and official property of the district attorney of the county of Kings and not subject to subpœna, in his opinion.

Prior to this particular application, there have been two dispositions of similar motions at Special Term, Kings county, which are contradictory of each other.   In one instance the production by the district attorney of the papers was required (by CALLAGHAN, J., with opinion, *Egenes* v. *Morse Dry Dock & Repair Co.,* 131 Misc. 428) in a civil action; in the other instance such relief was refused (by CARSWELL, J., without opinion, *Schabanowitz* v. *Heath's Baths, Inc.,* Kings County Special Term, October 6, 1927).   An authoritative ruling is, therefore, sought herein.

The appellant claims that the information procured by him is confidential and that it is contrary to public policy to permit of its being divulged, because it was procured for the purpose of aiding in the prosecution of a violation of a penal statute, particularly with reference to one Gibbons.   He relies chiefly upon *Worthington* v. *Scribner* (109 Mass. 487–489).   That action was brought for

maliciously and falsely writing to the Federal Treasury Department that the plaintiff was intending to defraud the government. The defendants were sought to be required to answer interrogatories of the plaintiff as to whether they did not give, or cause to be given, to the department information of supposed or alleged frauds on the Revenue Department by the plaintiff. The court, in passing upon that question, stated the principle which the district attorney invokes herein, thus:

" It is the duty of every citizen to communicate to his government any information which he has of the commission of an offense against its laws. To encourage him in performing this duty without fear of consequences, the law holds such information to be among the secrets of state, and leaves the question how far and under what circumstances the names of the informers and the channel of communication shall be suffered to be known, to the absolute discretion of the government, to be exercised according to its views of what the interests of the public require. *Courts of justice therefore will not compel or allow the discovery of such information,* either by the subordinate officer to whom it is given, by the informer himself, or by any other person, without the permission of the government. The evidence is excluded, not for the protection of the witness or of the party in the particular case, but upon general grounds of public policy, because of the confidential nature of such communications. [Italics ours.] The earliest case upon the subject is *Rex* v. *Akers,* 6 Esp. 125, note, in which, on an indictment for obstructing a custom-house officer in the execution of his duty, Lord KENYON said: ' The defendant's counsel have no right, nor shall they be permitted, to inquire the name of the person who gave the information of the smuggled goods.' All the English authorities agree that the rule has ever since been held in revenue cases to prevent a witness from answering questions that would disclose the informer, if a third person; and in *Attorney General* v. *Briant,* 15 M. & W. 169, it was held that a witness could not be asked on cross-examination whether he was himself the informer. The rule has been nearly as long established in prosecutions for high treason. *Rex* v. *Hardy,* 24 Howell's State Trials, 199, 753, 816–820, 823. *Rex* v. *Watson,* 32 Howell's State Trials, 1, 102–105; S. C. 2 Stark. 116, 136. And it has been often applied in civil actions."

That case was followed and adopted in *Attorney-General* v. *Tufts* (239 Mass. 458). It was adopted by the United States Supreme Court in *Vogel* v. *Gruaz* (110 U. S. 311, 316).

In *Vogel* v. *Gruaz* (*supra*) a slander action was being prosecuted. The defendant charged the plaintiff with being a thief. The plain-

tiff called the State's attorney of Illinois as a witness and, over objection of the defendant, had him testify that the defendant had complained to the State's attorney that the plaintiff had stolen his money and the State's attorney had advised the defendant to present his complaint to the grand jury.   This action was reviewed in the United States Supreme Court, following a verdict in favor of the plaintiff.   That court held that the communication of the defendant to the State's attorney was a privileged communication, having been made to that State attorney while he was acting as a criminal prosecutor.   The court was unanimous, and, through BLATCHFORD, J., said: " The fact that Mr. Cook held the position of public prosecutor, and was not to be paid by Bircher for information or advice, did not destroy the relation which the law established between them.  *It made that relation more sacred, on the ground of public policy.   The avenue to the grand jury should always be free and unobstructed.   Bircher might have gone directly before it, without consulting with Mr. Cook, but, if he chose to consult him, instead of a private counsel, there was great propriety in his doing so. Any person who desires to pursue the same course should not be deterred by the fear of having what he may say in the confidence of a consultation with a professional adviser, supposed to be the best qualified for the purpose, disclosed afterwards in a civil suit, against his objection.*" (Italics ours.)

That court reiterated this doctrine in *Matter of Quarles & Butler* (158 U. S. 532, 535), stating: " It is the duty and the right, not only of every peace officer of the United States, but of every citizen, to assist in prosecuting, and in securing the punishment of, any breach of the peace of the United States.   It is the right, as well as the duty, of every citizen, when called upon by the proper officer, to act as part of the *posse comitatus* in upholding the laws of his country.   It is likewise his right and his duty to communicate to the executive officers any information which he has of the commission of an offense against those laws; and such information, given by a private citizen, is a privileged and confidential communication, for which no action of libel or slander will lie, and the disclosure of which cannot be compelled without the assent of the government. *Vogel* v. *Gruaz*, 110 U. S. 311; *United States* v. *Moses*, 4 Wash. C. C. 726; *Worthington* v. *Scribner*, 109 Mass. 487."

Before examining the respondent's position in urging the inapplicability of the foregoing cases, it would be well to examine the authorities relied upon by CALLAGHAN, J., in deciding in a similar application that the district attorney may properly be required to disclose such information as is sought herein.   The opinion of CALLAGHAN, J., in *Egenes* v. *Morse Dry Dock & Repair Co.* (121

Misc. 428), should be followed if it is well grounded. It is therein said that facts similar to those involved herein are different from the communication in *Worthington* v. *Scribner* (*supra*), and, therefore, that case is inapplicable. It is not indicated in what manner they are different in substance, so as to render the case inapplicable.

The first case cited is *People* v. *Davis* (52 Mich. 569). There the defendant was charged with adultery in a criminal prosecution. It was sought to be shown on the criminal prosecution that the complaining witness had previously said to the prosecuting official that he had observed nothing wrong in the conduct of the parties on the day of the alleged commission of the offense. The exclusion of this testimony, upon appeal, was held to be error, the court saying: " In this case the prosecutor testified that on a particular day and at a place specified he witnessed the commission of the crime charged. The defense then offered to show that in laying the case before the prosecuting officer the prosecutor stated that on the day and at the place specified he witnessed nothing wrong between the parties. If he did so state at that time, when he was laying before the public authorities the very case they were to prosecute, and if he now swears to a case altogether different, it may well be argued that he is unworthy of belief; and the State has no interest in interposing any obstacle to the disclosure of the facts, unless it is interested in convicting accused parties on the testimony of untrustworthy persons. But surely the State has no such interest; its interest is that accused parties shall be acquitted unless upon all the facts they are seen to be guilty; and if there shall be in the possession of any of its officers information that can legitimately tend to overthrow the case made for the prosecution, or to show that it is unworthy of credence, the defense should be given the benefit of it."

That case does not make inapplicable the doctrine of the *Vogel* and *Worthington Cases* (*supra*), and is wholly consistent with them. The testimony was sought to be adduced in a criminal proceeding, in the early stages of the preparation or prosecution of which it is claimed statements were made which were contradictory of the testimony given in support of the prosecution by the witness testifying. This question was adverted to in *People ex rel. Lemon* v. *Supreme Court* (245 N. Y. 24, 34), where it is said respecting an attempt to have an inspection of certain memoranda in the district attorney's possession: " We have no occasion at this time to consider to what extent inspection might be directed at the trial as an aid to cross-examination after the witnesses had testified (4 Wigmore Evidence, § 2224)." This leaves open, in this State, the question

of availability of such matter in the criminal proceeding itself, as distinguished from a collateral civil proceeding, and which the Michigan court has held to be available to a defendant *in a criminal prosecution.*

The next case referred to is *Meysenberg* v. *Engelke* (18 Mo. App. 346). There the action was for malicious prosecution. One Herman was permitted to testify to communications between himself and the defendant, Engelke, concerning a criminal prosecution against plaintiff. Herman nominally, but not in fact, represented the State in that prosecution, and the court held that the circumstances there prevailing, which are not given in much detail, were not within the rule of privilege, which protects communications between attorney and client.

The next case relied upon is *People* v. *Roach* (215 N. Y. 592, 605). There the witness on behalf of the People was asked upon cross-examination in regard to certain statements he had made to one Woollard employed as an attorney on behalf of the county and who had obtained certain affidavits from some witnesses. The witness denied making the statements, and the defense sought to adduce from Woollard testimony contradicting the witness, and upon objection this testimony was excluded. The Court of Appeals, per SEABURY, J., held this was error upon the ground that *there were several other persons present when this alleged conversation occurred*, and, therefore, on the authority of *People* v. *Buchanan* (145 N. Y. 1), there was no privilege and the conversation was not confidential. There is no claim in the instant case that the statements were obtained under circumstances which destroyed confidence. *People* v. *Buchanan* (*supra*), cited in *People* v. *Roach* (*supra*), merely stated the familiar rule that while communications between attorney and client as between themselves are protected from disclosure, the protection vanishes if such communications are had in the presence of another person or stranger.

It thus appears that the authorities relied upon by the Special Term was inapposite.

The respondent herein asserts that Professor Wigmore establishes his right to the order appealed from. (See 5 Wigm. Ev. [2d ed.] § 2378, pp. 194, 195.) The first quotation is: " In any community under a system of representative government and removable officials, there can be no facts which require to be kept secret with that solidity which defies even the inquiries of a court of justice." This is a bald assumption without basis in fact, because there are instances which require " to be kept secret with that solidity which defies even the inquiries of a court of justice." Such

an instance is found in *People ex rel. Lemon* v. *Supreme Court* (245 N. Y. 24).

The next quotation is: " It is urged, to be sure   *   *   *, that the ' public interest must be considered paramount to the individual interest of a suitor in a court of justice.'   As if the public interest were not involved in the administration of justice!   As if the denial of justice to a single suitor were not as much a public injury as is the disclosure of any official record!   When justice is at stake, the appeal to the necessities of the public interest on the other side is of no superior weight.   ' Necessity,' as Joshua Evans said, ' is always a suspicious argument, and never wanting to the worst of causes.' "   This assumes something contrary to what has been decided.   The United States Supreme Court in *Vogel* v. *Gruaz* (*supra*) pointed out that " Public policy will protect all such communications, absolutely, and without reference to the motive or intent of the informer or the question of probable cause; *the ground being, that greater mischief will probably result from requiring or permitting them to be disclosed than from wholly rejecting them.*"

Weighing, on one side, the effect of the denial of this material to a single suitor against, on the other side, the effect on the public interest in criminal prosecutions of the disclosing of it, it is concluded that the statement that " the appeal to the necessities of the public interest on the other side is of no superior weight " is incorrect and that it is in fact of superior weight.

The next quotation is: " After guaranteeing to official communications and acts an immunity from liability to civil or criminal consequences, and after further eliminating those acts and communications which are in no sense secret from their inception, what remains of real and intrinsic secrecy of transaction?   If there arises at any time a genuine instance of such otherwise inviolate secrecy, let the necessity of maintaining it be determined upon its merits.   But the solemn invocation, in the precedents above chronicled, of a supposed inherent secrecy, has commonly been only a canting appeal to a fiction.   It seems to lend itself naturally to mere sham and evasion."

This dogmatic assertion should, of course, be given such heed as its learned source justly warrants, in connection with the actual holdings of the courts in cases that are pertinent and contrary to that for which the able author contends.

In connection therewith, the argument of the respondent may be considered.   It is, as I glean it, *first*, that the real purpose of the preventing of disclosure was to protect the identity of the informer, and not necessarily to protect the information he furnished from disclosure; and *second*, that the privilege, if not resting

upon that ground, grows by analogy out of the privileged character of statements between attorney and client.

He insists there is no basis for the first ground of protection in this case, or, indeed, in any case, after an indictment has been filed or information prosecuted, since the names of the witnesses then become a matter of public record. But this does not necessarily mean that the information and sources thereof possessed by the district attorney are solely those indicated by the names of those appearing as witnesses upon the indictment or information. Moreover, the adjudications which have been quoted as affording the protection have not limited protection to those who in fact appear as witnesses before grand juries or otherwise. One early English case would not permit the disclosing of the person who sent the informer to the prosecutor. The public interest has been deemed to be broad enough to inclose within the protection " any person who desires to pursue the same course," that is, of furnishing information to the district attorney, and he " should not be deterred by the fear of having what he may say in the confidence of a consultation with a professional adviser [the public prosecutor or district attorney], supposed to be the best qualified for the purpose, disclosed afterwards in a civil suit." (*Vogel* v. *Gruaz, supra.*)

The second ground is that the privilege of the relation of attorney and client should not be applied by analogy to informers disclosing to the district attorney the facts as to a happening which may be a crime. The answer to this is, the authorities have long since applied the rule to just such a situation for very cogent reasons founded upon sound public policy. With the administration of the criminal law under such alert scrutiny and hostile criticism, judicial rulings should not be had which would even remotely impair the vigor of the processes of the administration of the criminal law. Communications to the district attorney in connection with possible prosecutions of crime should not be disclosed, with the attendant deterrent effect upon people coming forward to furnish information, or with a corresponding deterrent effect upon freedom of utterance by those forcibly brought forward to be interrogated by the district attorney in advance of the tendering, if it becomes necessary, of them to the grand jury or elsewhere.

Production under order of the court of the memoranda required in the order under review, if it does not violate, is repugnant to the rationale of the decision in *People ex rel. Lemon* v. *Supreme Court* (245 N. Y. 24, 34). In that case an order was made requiring the district attorney to file for inspection by the defendant in a criminal prosecution certain memoranda in the district attorney's possession relative to the crime charged against the defendant, but which

memoranda was inadmissible as evidence either for the prosecution or defense. It was held that this order could not be sustained, and it was stated in an opinion by Chief Judge CARDOZO that " They are merely mnemonic instruments whereby the prosecutor may be better able to elicit evidence hereafter. A mandate giving them publicity is something more than error in the exercise of power. It is an assumption of power where none has been confided (*Matter of Sawyer*, 124 U. S. 200, 221; *Quimbo Appo* v. *People*, 20 N. Y. 531; *St. Louis R. R. Co.* v. *Wear*, 135 Mo. 230, 256)."

That is precisely the situation in this case, except that the memoranda sought is for use in a civil suit under circumstances having a less urgent appeal for the permitting of their use than the circumstances in the criminal case just cited, where the defendant wished them to better present her defense. " Her demand is that a prosecutor who has gathered statements from prospective witnesses shall place the statements in her hands that she may study and repel them." (P. 33.)

Here the plaintiff in a civil proceeding wishes to use corresponding memoranda for precisely the same purpose. But they may not be had for a reason similar to the one because of which they were denied the defendant in the criminal proceeding, where it was noted, " In a word, statements and memoranda collected by the prosecutor are to be exhibited to the defendant, though none of them will be admissible either for her or against her if offered at the trial." (P. 34.)

The rule we believe to be controlling herein is that rule which has the sanction of the United States Supreme Court, Massachusetts and the English courts. These courts lay down the safer rule, which should be followed in this case, of denying access to the statements made by persons to the district attorney in connection with his duties in seeking evidence to prosecute public offenses. The injury to be apprehended to the public interest from not following that course is greater than the injury which may accrue to the private individuals seeking justice as a result of denying to them access to the public prosecutor's memoranda.

The order appealed from should be reversed upon the law and the facts, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

LAZANSKY, P. J., RICH, KAPPER and SEEGER, JJ., concur.

Order reversed upon the law and the facts, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.