The People of the State of New York, Respondent, *v.* William J. Keating, Appellant.

First Department, June 7, 1955.

*James D. C. Murray* of counsel (*Irving Greenberg* and *Joseph Halpern* with him on the brief; *James D. C. Murray*, attorney), for appellant.

*Richard G. Denzer* of counsel (*Charles W. Manning* and *Leonard E. Reisman* with him on the brief; *Frank S. Hogan, District Attorney, New York County*, attorney), for respondent.

BREITEL, J.  William J. Keating, counsel to the New York City Anti-Crime Committee, Inc., at the time of his alleged offense, appeals from an order adjudging him of contempt, and sentencing him to five days in the City Prison, for his refusal to divulge sources of criminal information about others, before a Grand Jury drawn for the Court of General Sessions.  He asserts that the identity of his informers was confidentially acquired while he was engaged by his employer, a voluntary private agency, in aiding in the enforcement of the criminal laws.  Consequently, he argues, the source of his information was privileged as confidential, and its disclosure could not be compelled.

There is no such privilege in the administration of public justice, and the confidential character of the communications or the identity of his informers may be disclosed, by compulsion, if necessary, in a court or grand jury having jurisdiction. Accordingly, the order should be affirmed.

Mr. Keating is a member of the Bar and a former assistant district attorney in the County of New York.  The Anti-Crime Committee, Inc., although a private and voluntary organization, was created at the suggestion of a Grand Jury drawn for the County Court in the County of Kings.  The committee is supported and directed by public-spirited citizens concerned with the enforcement of the criminal laws.  It has engaged in the promotion of remedial legislation, the spurring into activity of public officials charged with law enforcement, and in investigations designed to implement its other activities.  Nevertheless, its status is private and there is no legal, professional or governmental control over its membership, activities, or the selection of its staff, except to the very slight degree that all private organizations may be subject to such control.

The record reveals that the Grand Jury and the District Attorney sought the disclosures from Mr. Keating only after the publicly and privately uttered statements of Mr. Keating were found unsupportable in its investigation, and indeed, were flatly contradicted in material particulars by witnesses in a position to know the facts.  The official investigation was further confronted with Mr. Keating's assertion with respect to some of the

police witnesses, that their views should be accepted rather than those of his undisclosed informers. Involved were not only serious charges, made by Mr. Keating, of illegal telephone wire tapping, which charges had excited the interest of both the United States Congress and the State Legislature, but of corruption by ranking police officers and conspiracy with ranking, but unnamed or misnamed, officers of the New York Telephone Company.

The 1949 Report of the New York Law Revision Commission stated the principle which has now obtained for many decades, as follows: " The person subpœnaed before a court, an administrative officer or a legislature must ordinarily tell all he knows about the matter at issue, or risk fine or imprisonment for contempt. The circumstances under which a witness may keep silent with impunity, or under which he is forbidden to speak even if he wishes to, are necessarily infrequent and extraordinary. Not every story told to the witness ' in confidence ' may, without risk to the witness who withholds it, be concealed in court. The conception of a gentleman's honor which requires him not to break a pledge of silence, is not a defense on a citation for contempt." (1949 Report of N. Y. Law Revision Commission, p. 33.)

There is a limited number of statutory privileges. They are absolute in the sense that, even in matters involving public justice, a court may not compel disclosure of confidential communications thus made privileged. They relate to confidential communications between husband and wife, between attorney and client, between physicians, dentists, nurses and their patients, and between clergymen and communicants (Civ. Prac. Act, §§ 349–354; *People* v. *Shapiro,* 308 N. Y. 453). When it was sought to persuade the court to extend a similar privilege to newspapermen, the Court of Appeals said that it was against the general policy of the law to extend the classes to whom the privilege from disclosure now applies. The court said further that, if anything was to be done about it, it should be done by the Legislature, which had thus far refused to enact such legislation. (*People ex rel. Mooney* v. *Sheriff of New York Co.,* 269 N. Y. 291.)

It is clear, therefore, that (1) Mr. Keating does not come within any of the statutory privileges; and (2) the courts, in the absence of any legislation, are powerless to extend any such privilege to him.

In addition to the statutory, there is quite another kind of privilege recognized in the courts. This privilege attaches to

confidential communications between public officers, and to public officers, in the performance of their duties, where the public interest requires that such confidential communications or the sources should not be divulged. (*Matter of Egan,* 205 N. Y. 147, 157; *Lewis* v. *Roux Trucking Corp.,* 222 App. Div. 204; *People ex rel. Heller* v. *Heller,* 184 Misc. 75; 70 C. J., Witnesses, §§ 616–617; 8 Wigmore on Evidence [3d ed.], § 2367 *et seq.*) The invocation of this rule of nondisclosure requires that (1) the person in whom the confidence is placed be a public official; (2) that he be acting in the performance of his duties; and (3) the communication be in the public interest. Obviously, Mr. Keating can not meet this test. Moreover, a most interesting thing about this privilege is that some authorities hold it is highly qualified. Indeed, Mr. Keating relies heavily on Wigmore to support his claim of privilege. But, it is stated by Wigmore: " Even where the privilege is strictly applicable, the *trial Court may compel disclosure,* if it appears necessary in order to avoid the risk of false testimony or to secure useful testimony." (8 Wigmore on Evidence [3d ed.], p. 756.) (Emphasis supplied in original.) (But there is strong authority in civil cases that the privilege is not so qualified [*Lewis* v. *Roux Trucking Corp., supra; Nields* v. *Lea,* 274 App. Div. 890, revg. 191 Misc. 970; *Vogel* v. *Gruaz,* 110 U. S. 311. *Semble contra: Pecue* v. *West,* 233 N. Y. 316].)

Obviously, the extension of this privilege to Mr. Keating, if the views of Wigmore were adopted, would not avail him in the situation in which he found himself in the Grand Jury. Otherwise, Mr. Keating would be in a preferred position over prosecuting attorneys and police officers under Wigmore's rule, which qualifies the privilege. When, with knowledge of the record, the Judge presiding over the Grand Jury directed him to answer in the public interest, he would thus have had no recourse except to answer.

Moreover, when there has been consideration for legislative extension of a confidential privilege, the policy view seems to lean towards a qualified privilege, rather than to create an absolute one. In 1949, the Law Revision Commission, at the specific request of the Legislature, made a study of the proposal for extending the confidential privilege to newspapermen. This followed years of agitation for legislation to confer an absolute privilege on newspapermen. (1949 Report of N. Y. Law Revision Commission, pp. 101–125.) The commission did suggest that newspapermen have the right to refuse to divulge sources of information, but it recommended the granting of only a qualified

privilege. In the legislation proposed by the commission it was provided that, whenever the privilege was claimed, application could be made to the Supreme Court to compel the newspaperman to make disclosure on the ground of public interest (pp. 27–29). The proposed bill was never introduced in the Legislature, nor was any bill passed conferring either an absolute or a qualified privilege on newspapermen. The American Law Institute in proposing the Model Code of Evidence went no further in conferring only a qualified privilege on the confidants of informers. (Rule 230.)

Thus we see that the statutory privilege has been granted to very few classes, all but one of which require that the person in whom the confidence is reposed be a member of a licensed or regulated profession, acting in specified professional relationships. Moreover, the courts have uniformly held that they may not extend that type of privilege in the absence of specific legislation. The public privilege, on the other hand, has been judicially recognized, in limited cases, and applied to public officers whose selection and responsibilities are determined as a part of the governmental elective or appointive system.

A situation almost identical with that involved in this case arose recently in Louisiana. The chief investigator and executive director of a special citizens investigating committee in the city of New Orleans, was found guilty of contempt for refusing to answer questions before a Grand Jury. The court held, as we do here, that, in the absence of statute, the witness had no privilege other than the constitutional one against self incrimination. (*Matter of Kohn*, 79 So. 2d 81.)

The order adjudging the appellant guilty of contempt should be affirmed.

COHN, J. P., CALLAHAN, BOTEIN and RABIN, JJ., concur.

Order unanimously affirmed.