## Meaney v. Loew's Hotels, Inc.

*Mervine, Brown & Newman,* for petitioners.

*William C. Gumble,* for respondent.

WILLIAMS, P. J., March 7, 1968.—This is a proceeding to compel a Pennsylvania witness to appear in Pennsylvania before a commissioner designated by a court of the State of New York and to testify under oath on behalf of plaintiffs in a civil cause now pending in the latter State. On January 24, 1966, the Supreme Court of the State of New York in and for New York County ordered that a commission issue to Roy S. Mohrbach, official court stenographer, at the County Court House, Pike County, at Milford, Pa., ". . . for the examination under oath of Robert Kayton and Carl E. Rohner as witnesses in behalf of the plaintiffs . . . and . . . that counsel for the respective parties herein or either of them be and hereby are authorized and allowed to attend before said Commissioner and orally examine and cross examine said witnesses . . ." in the case of James Meaney and Mylda M. Meaney, plaintiffs, against Loew's Hotels, Inc., John Pringle, and John Hartman, defendants, index no. 16259, year 1965. An exemplified copy of this order was attached to plaintiffs' petition to the Court of Common Pleas of Pike County, Pa., in response to which this court, by order dated February 28, 1966, under Pennsylvania Rule of Civil Procedure 4018, directed the prothonotary to issue a subpoena, including a duces tecum clause, directing Robert Kayton and Carl E. Rohner to appear for examination on March 18, 1966, at 1 p.m., before

Roy S. Mohrbach in the court house at Milford, Pike County, Pa. The witness Kayton appeared but declined to testify. Thereupon, plaintiffs filed the instant petition, under Pa. R. C. P. 4019 (b) for a rule upon Robert Kayton, Esq., District Attorney of Pike County, to show cause why he should not be required to appear and testify under oath in the said matter. This petition contained no disclosure of the nature of the cause pending, the pleadings and issues therein, or any specification of the questions to be asked of the witness. It did, however, contain the following averments:

"5. (b) The depositions sought from the witness, Robert Kayton, Esq., District Attorney of Pike County, will not call for the results of any confidential investigation or privileged communications;

"(c) The depositions of the said witness, and the information sought from him, are relevant to the subject matter of the action . . . and would substantially aid in the preparation of the pleadings and trial of said case".

Respondent filed answer:

"5. (b) Denied for the reason that Respondent has no way of knowing the extent to which Petitioners seek to depose him.

"(c) Denied for the reason that Respondent lacks information sufficient to reply thereto by specifically averring that the relevancy of his depositions to the Civil Proceedings in the State of New York is irrelevant".

Counsel for plaintiffs, in their brief filed September 5, 1967, attached a statement of questions proposed to be put to the witness. Summarized, the questions were framed to establish whether or not, when James and Mylda M. Meaney came to respondent's office on May 28, 1965, respondent did not tell them, in response to a question by James Meaney, that on or about April 6, 1965, John Pringle told respondent that he believed

Mr. Meaney had committed a crime and that stolen property belonging to the Americana Hotel of New York City could be found at Mr. Meaney's home in Bushkill, Pa. Subsequently, ostensibly in support of plaintiffs' petition, the deposition of James Meaney was taken on October 7, 1967, wherein he testified to his own version of what respondent told him on May 28, 1965, concerning statements allegedly made by Pringle to respondent. Finally, after the argument of the case, counsel for plaintiffs filed a supplemental brief to which was attached a photo-mechanical copy of the complaint filed in the New York State proceeding. The fourth count therein states a cause of action in slander. Paragraph 25 contains averments that, on April 6, 1965, defendant John Pringle went to the office of Robert Kayton, District Attorney of Pike County, Pa., and maliciously spoke the following false and defamatory words: "I believe that the crime of larceny has been committed by James Meaney. Material belonging to the Americana Hotel can be found in the home of James Meaney, in Bushkill, Pennsylvania. I request a warrant for the arrest of James Meaney".

The right of plaintiffs to secure the aid of the court in compelling the witness to testify in this case is governed by the Uniform Foreign Depositions Act of May 5, 1921, P. L. 374, which has been preserved from suspension specifically by Pa. R. C. P. 4023. Section 1 of the act, 28 PS §31, provides:

"Whenever any mandate, writ, or commission is issued out of any court of record of the United States, or any of its territories or possessions, or of any State of the United States, or of any foreign country, or of any jurisdiction outside of Pennsylvania, or whenever, upon notice or agreement, it is required to take the testimony of a witness or witnesses in this State, witnesses may be compelled to appear and testify *in the same manner and by the same process and proceeding*

*as may be employed for the purpose of taking testimony in proceedings pending in this State".* (Italics supplied.)

With reference to Pennsylvania proceedings, Pa. R. C. P. 4007 (a) provides:

"Any party may take the testimony of any person, including a party, for the purpose of discovery by deposition upon oral examination or written interrogatories of the identity and whereabouts of witnesses. Subject to the limitations provided by Rule 4011, the deponent may also be examined regarding any matter, [a] *not privileged,* which is [b] *relevant to the subject matter involved in the action* and [c] will substantially aid in the preparation of the pleadings or the preparation or trial of the case". (Italics and brackets supplied.)

Robert Kayton, Esq., appeared at the time and place fixed for the taking of his deposition and made the following statement:

"My position is that I cannot testify as a matter of public policy to any information which might have come to my attention in my official capacity".

The single issue raised in the briefs filed by counsel and in the oral arguments is whether a district attorney may, on the ground of a public interest privilege, refuse to testify to a conversation between him and an informer, relating to matters transpiring in the course of his official duties in aid of collateral civil proceedings between the alleged suspect and the informer.

In actions of the type here involved, the question of privilege presents a double aspect: (1) the *positive* privilege of defendant John Pringle to appear before the District Attorney of Pike County and charge plaintiff James Meaney with a criminal offense; and (2) the *negative* privilege of the witness Robert Kayton to refuse to testify concerning his conversation with De-

fendant John Pringle, an informer, relating to matters transpiring in the course of his official duties as District Attorney of Pike County, in aid of *collateral* civil proceedings between the alleged suspect and the informer. Defendant Pringle has not claimed privilege, and it will not be necessary to explore the question whether any privilege which he may have is absolute or qualified, or whether under the principles of conflict of laws words spoken in Pennsylvania to a Pennsylvania district attorney may support an action for slander brought in New York. Here, the narrow issue presented is whether or not respondent possessed the negative privilege not to testify.

There is a dearth of Pennsylvania authority upon the precise point. In Sosna v. Finkelstein, 74 Montg. 522, 523 (1958), plaintiff had filed a complaint in trespass presenting three counts: slander, libel, and malicious prosecution. All were based upon the allegation that defendant had complained to "police and judicial officers" and signed an information charging plaintiff with the theft of approximately $2,500. It does not appear affirmatively whether or not the district attorney was one of the officers. While the civil action was pending, a criminal prosecution on the charges terminated favorably to plaintiff. Defendant had filed preliminary objections urging that the counts in libel and slander be dismissed. Plaintiff moved for an order and request for a subpoena duces tecum under Pa. R. C. P. 4018. Defendant countered with a motion for a protective order under Pa. R. C. P. 4012 (a). The court sustained the preliminary objections to the counts in slander and libel, and Judge Gerber said:

"In a supplementary brief filed with the court, plaintiff concedes that defendant's statements were absolutely privileged, that they do not give rise to a cause of action in either slander or libel, and asks that defendant's preliminary objections thereto be sus-

tained. The court after examination of the authorities agrees".

Unfortunately, the court did not favor us with any discussion or citation of the authorities relied upon. The ruling of the court might be supported upon either or both of two grounds: the positive privilege of defendant to make the charge, or the negative privilege of the "police and judicial officers" to decline to testify concerning the charge.

The separate treatment of the two types of privilege is shown clearly in the leading case of Vogel v. Gruaz, 110 U. S. 311, 4 S. Ct. 12, 28 L. Ed. 158 (1884). There, plaintiff brought an action against defendant for having falsely charged plaintiff with larceny. At trial, plaintiff called the district attorney of Madison County, Illinois, as a witness in his behalf. He testified, over objection by counsel for defendant, that defendant had come to him and accused plaintiff of having stolen his money and that he, the district attorney, then referred defendant to the grand jury. After the jury rendered a $6,000 verdict for plaintiff, the lower court overruled defendant's motion for a new trial; but, on appeal, the Supreme Court reversed. Mr. Justice Blatchford ruled that defendant's communication to the district attorney was absolutely privileged, and then went on to say, page 316-317:

"But there is another view of the subject. The matter concerned the administration of penal justice, and the principle of public safety justifies and demands the rule of exclusion. In Worthington v. Scribner, 109 Mass. 487, an action for maliciously and falsely representing to the Treasury Department of the United States that the plaintiff was intending to defraud the revenue, it was held that the defendant could not be compelled to answer whether he did not give to the department information of supposed or alleged frauds on the revenue contemplated by the plaintiff. The princi-

ple laid down in that case was, that it is the duty of every citizen to communicate to his government any information which he has of the commission of an offense against its laws; and that *a court of justice will not compel or allow such information to be disclosed, either by the subordinate officer to whom it is given, by the informer himself, or by any other person, without the permission of the government, the evidence being excluded not for the protection of the witness or of the party in the particular case, but upon general grounds of public policy, because of the confidential nature of such communications.* The authorities are collected and reviewed in that case. The case of Dawkins v. Rokeby, L.R., 8 Q.B., 255, there cited, was affirmed by the House of Lords, L.R. 7 H.L., 744. See, also, 1 Greenleaf on Evidence, §250; Black v. Holmes, 1 Fox & Smith, 28". (Italics supplied.)

It is significant that the appellate courts of New York State have followed the authority of Vogel. In Lewis v. Roux Trucking Corporation, 222 App. Div. 204, 226 N. Y. S. 70, 79 (Supreme Ct., App. Div., 2d Dept., 1927), plaintiff's decedent had been killed in an accident involving one Gibbons. Plaintiff brought a civil action to recover damages. The trial court granted plaintiff's motion for a subpoena duces tecum directed to the district attorney of Kings County requiring him to produce his records of questions asked by the assistant district attorney and the answers thereto made by Gibbons and another witness Rourke. The district attorney had resisted the motion on the ground that the statements were taken in the course of his official business and duty, and thus were the confidential and official property of the district attorney of Kings County. He appealed, and the Supreme Court of the appellate division reversed and denied the motion for the subpoena. After citing Vogel and other authorities in an excellent discussion of the subject, Carswell, J., concluded:

"The rule we believe to be controlling herein is that rule which has the sanction of the United States Supreme Court, Massachusetts, and the English Courts. These Courts lay down the safer rule, which should be followed in this case, of denying access to the statements made by persons to the district attorney in connection with his duties in seeking evidence to prosecute public offenses. The injury to be apprehended to the public interest from not following that course is greater than the injury which may accrue to the private individuals seeking justice as a result of denying to them access to the public prosecutor's memoranda".

Again, in Heaphy v. Mandio, 278 App. Div. 579, 102 N. Y. S. 2d 11 (Supreme Court, Appellate Div. 2d Dept., 1951), the Supreme Court of the appellate division sustained the rule in Lewis and affirmed the order of the lower court which denied the motion of plaintiff in a death action for the discovery and inspection of material in the possession of the district attorney of Queens County.

The distinction between *positive* privilege and *negative* privilege is clearly demonstrated in application of Langert; 5 A.D. 2d 586, 173 N.Y.S. 2d 665, 667, 668 (Supreme Ct., Appellate Div., 1st Dept., 1958). There, plaintiff brought a civil action for defamation. An informant had lodged an accusation of extortion against him with the commissioner of investigation, who conducted an investigation but made no findings. Since plaintiff lacked information both as to the identity of the informer and the nature of the communication, the trial court granted his request for an order directing the commissioner to appear and submit to examination. On appeal, the Supreme Court of the appellate division reversed and Justice Breitel said:

"The order granting the petition should be reversed and the petition dismissed on the ground that the Commissioner has a public interest privilege which prevents

disclosure. The essential confusion in the matter is between that of the qualified privilege of the informant (see Pecue v. West, 233 N.Y. 316, 135 N.E. 515) and the privilege based on public interest conferred on some public officers in connection with the performance of their duties where the public interest requires that such confidential communications, or the sources, not be divulged (People v. Keating, 286 App. Div. 150, 152-153, 141 N.Y.S. 2d 562, 564-565). . . .

"The highly confidential and investigative function performed by the Commissioner of Investigation of the City of New York has been clearly determined by the Court of Appeals (Cherkis v. Impellitteri, 307 N.Y. 132, 120 N.E. 2d 530). The very purpose of that office would be defeated if communications made to the Commissioner were subject to revelation at the suit of the affected individual. In this respect the Commissioner's function is closely allied to that of the District Attorney or the police officer (Lewis v. Roux Trucking Corp., 222 App. Div. 204, 226 N.Y.S. 70; People ex rel. Woodill v. Fosdick, 141 App. Div. 450, 452-453, 126 N.Y.S. 252; cf. Nields v. Lea, 274 App. Div. 890, 82 N.Y.S. 2d 512). Generally, the information received or the records made thereof by public investigating officials is not subject to disclosure or inspection, but there are exceptions. People v. Walsh, supra, 262 N.Y. 140, 149, 186 N.E. 422, 424; People ex rel. Lemon v. Supreme Court of State of New York, 245 N.Y. 24, 156 N.E. 84, 52 A.L.R. 200; 8 Wigmore, Evidence, 3rd ed., §2374.

"Thus, for instance, upon a criminal trial the court has power to compel disclosure of matter admissible in evidence, relevant to the innocence of the defendant, and not countervailed by a superior public interest (People v. Walsh, supra; People ex rel. Lemon v. Supreme Court of State of New York, supra; Roviaro v. United States, 353 U.S. 53, 59-62, 77 S. Ct. 623, 1 L.

Ed. 2d 639). It is in this sense that the public interest privilege of the public official may be qualified, that is, the privilege is displaced by a superior public interest, if there be one. So, in a public interest privilege of a *public official* in the executive branch, a balancing of public convenience is involved. On the other hand, with certain statutory privileges and the public interest privilege asserted by a *private person*, who has imparted the confidential communication, these may be subject to denial because of improper purpose, malice, or other 'disqualifying' circumstance". (Italics supplied).

In New York State, statutory enactments, such as the Public Officers Law, passed in 1941, have made certain specified records available to private litigants; but it does not appear that these have any application to the office of District Attorney. See Scott v. County of Nassau, 23 Misc. 2d 648, 252 N.Y.S. 2d 135, 138 (Supreme Ct., Special Term, Nassau Co., Part I. 1964).

The diligence of counsel, as well as our independent search, has failed to discover any reported Pennsylvania court decision dealing directly with the issue here presented. While undoubtedly courts of other jurisdictions have varied in their decisions on this question, the weight of authority supports the position of the respondent. Both the United States Supreme Court and the New York State courts have held that a district attorney has a public interest privilege which prevents disclosure to a litigant in a civil action of information that has come to him in the course of his official duties. We believe this to be a sound principle of law.

We live at a time when the crime rate is rapidly on the increase. Knowledgeable and responsible people are saying that crime has become the major social problem in the United States. The voices of the clergy, news editors, news commentators, high government officials and educators have frequently been heard demanding

the involvement of private citizens in law enforcement. Citizens are being constantly urged to give the police and prosecuting attorneys any information they possess which may lead to the solution of a crime. A rule of law which would permit a district attorney to use such information, to aid the person affected by it, in a collateral civil suit for libel or slander against the informant, would curb and restrain the average citizen from making known to the district attorney important information within his knowledge. Such a restraint on the citizen would be detrimental to the public safety and security.

In our opinion, the respondent properly refused to testify to any communication which the defendant John Pringle may have made to him in his official capacity as District Attorney of Pike County.

Accordingly, we enter the following Order:

And now, March 7, 1968, the rule issued by this court on November 18, 1966, on Robert Kayton, Esq., then District Attorney of Pike County, to show cause why he should not be directed to appear before Roy S. Mohrbach, official court stenographer, and be sworn and give depositions in behalf of plaintiffs in a civil action pending in the City and State of New York, in which James Meaney and Mylda M. Meaney are plaintiffs and Loew's Hotels Inc., and John Pringle and John Hartman are defendants, is hereby discharged.